**HAYES et al. v. UNION PAC. R. CO. et al.**
No. 28990.

United States District Court
N. D. California, S. D.

Jan. 19, 1950.

Harold M. Sawyer, Gladstein, Andersen, Resner & Sawyer, all of San Francisco, Cal., for plaintiffs.

T. W. Bockes, W. R. Rouse, Elmer Collins, James A. Wilcox, all of Omaha, Neb., and E. E. Bennett, Edward Renwick, Malcolm Davis, and W. J. Schall, all of Los Angeles, Cal., for Union Pac. R. Co.

Marion B. Plant, Brobeck, Phleger & Harrison, all of San Francisco, Cal., for Dining Car Employees Union Local 372.

ROCHE, Chief Judge.

This is an action to prevent, and secure damages for, unlawful discrimination under the Railway Labor Act, 45 U.S.C.A. § 151 et seq. Petitioner Hayes is a Negro member of the respondent Dining Car Employees Union Local 372 (hereinafter referred to as "Union") and is employed by respondent Union Pacific Railroad Company (hereinafter referred to as "Railroad") in its dining car and commissary service. He brings this action on behalf of himself and all other Negro employees similarly situated.

Respondents have filed certain motions to strike and have moved to dismiss the action on the grounds of (1) failure to state a cause of action upon which relief may be granted and (2) lack of jurisdiction of the Court over the subject matter. In resisting these motions the petitioners rely entirely on the decisions of the Supreme Court in Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, and Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187. Indeed, petitioners go so far as to assert that unless they bring themselves within the principle of the Steele and Tunstall cases, supra, there is no authority on which jurisdiction of this Court can rest. The fundamental question of jurisdiction thus depends on whether the record before this Court discloses a factual situation within the scope of the cited authorities. The Steele and Tunstall cases, supra, involved collective bargaining agreements that were discriminatory by their terms. There is no allegation in the present case that the collective bargaining agreement executed by Union and Railroad on June 1, 1942, and still in effect, discriminates against petitioners. They allege, instead, that discrimination has been effected by the conduct of the respondents under the agreement, and contend that this is sufficient, under the Supreme Court decisions, to give this Court jurisdiction. The alleged discrimination arises in connection with respondent Railroad's seniority assignments and promotions.

It appears from the record that the collective bargaining agreement provides that, as of the date of his hiring (whether before or after the date of the Agreement), each member of the Union employed by Railroad shall be assigned a seniority date in a seniority group and class. There are four seniority groups: AA (selective runs covering streamliner trains), A (standard dining car runs), B ("challenger" runs covering the so-called challenger type trains which Railroad discontinued in 1947), and C (miscellaneous, covering such types as cafe-lounge cars). Each group contains certain seniority classes, such as, Class I (chef-caterer), Class II (chef), and Class III (second cooks, etc.). The Agreement further provides the system by which employees can advance to a higher seniority classification. Non-temporary and certain other types of positions which become vacant are announced by means of a bulletin. Bids are then accepted from employees desiring to be considered for such vacancies. Promotion and assignment are based on seniority, fitness and ability; fitness and ability being sufficient, seniority prevails. Assignment to a nontemporary position of a seniority higher than that held gives to the employee so assigned such higher seniority classification and seniority date.

Petitioners allege that at the time of their original hiring only white members of the Union have been assigned to Group A, Classes I and II, while all Negro members have been assigned to Group B, Class III. They further allege that Railroad has refused to accept petitioners' bids for bulletined positions in higher seniority classifications, while filling such positions with Union's white members having lesser seniority than have petitioners, and that Railroad has employed petitioners in Group A, Classes I and II positions without any criticism of their fitness and ability but without assigning them such seniority classification. Petitioners further charge that they have been so deprived of their seniority rights solely because they are Negroes and that this has been done by Railroad in connivance with the Union.

Turning now to the Steele and Tunstall cases, supra, upon which the petitioners ground their right of action, we find cer-

tain points of similarity and one of vital difference. In those cases the petitioners were Negro firemen employed by the respondent railroads, whose established practice was to promote only white firemen to engineers. The respondent Brotherhood, which excluded Negroes from its membership, was the authorized, exclusive bargaining representative of the craft of firemen employed by the railroads. The Brotherhood and the railroads entered into agreements restricting the seniority rights and the employment of Negro firemen, without giving them prior notice or opportunity to be heard.

The facts before this Court show that the respondent Union is the authorized, exclusive bargaining representative for all of Railroad's employees in its dining car and commissary service and that Negro employees are admitted to Union membership without discrimination. They further show the existence of a collective bargaining agreement between Union and Railroad but the record contains no allegations that such agreement discriminates against petitioners. Since the petitioners have amended their original complaint twice and have filed a supplemental complaint, the absence of such allegations indicates that the agreement is not discriminatory. The Court believes that this difference between the facts in the instant case and those before the Supreme Court in the Steele and Tunstall cases, supra, is decisive on the issue of jurisdiction.

The Steele case, supra, holds that the Railway Labor Act imposes on the statutory representative of a craft (i. e., the authorized, exclusive bargaining representative) the duty to represent, in collective bargaining and in making contracts, all employees in the craft, without discrimination because of their race. The Tunstall case, supra, holds that the federal courts have jurisdiction to entertain a nondiversity suit for the violation of such duty by the statutory representative of a craft, since it is the federal statute, the Railway Labor Act, which condemns as unlawful such conduct by the representative.

The Railway Labor Act is not a Fair Employment Practices Act. It imposes no duty upon the employer to act without discrimination, nor do the Steele and Tunstall cases, supra, so hold. The decision of the Steele case affected the employer railroad only by the holding that the railroad could not take the benefits of a contract which the bargaining representative is prohibited by the statute from making (which is simply the statement of an elementary principle of contract law). Such duty not to discriminate on the basis of race is imposed only on the statutory representative and only with respect to collective bargaining and the making of contracts. It is to be observed that while the facts of those cases were that the employer railroads practiced discrimination in the assignment and promotion of employees, and that the union Brotherhood practiced racial discrimination in its membership, the Supreme Court did not extend its ruling to include such practices in the prohibited area, but limited the rule to contracting and collective bargaining by the bargaining representative. Any doubt on this point was removed by the Supreme Court itself in Graham v. Brotherhood of Locomotive Firemen and Enginemen, 338 U.S. 232, 70 S.Ct. 14, 17, where the Court, referring to the Steele and Tunstall cases, supra, said: "We held there that, as the exclusive statutory representative of the entire craft under the Railway Labor Act, the Brotherhood could not bargain for the denial of equal employment and promotion opportunities to a part of the craft upon grounds of race."

In the Steele and Tunstall cases, supra, the bargaining representative had made contracts which clearly violated this described duty. In the instant case neither the original complaint nor its amended forms contain any allegations that the respondent Union has violated this duty through collective bargaining or contracting. The sole allegation made against the Union is that it has acted "in connivance" with the Railroad in the practices allegedly committed by the Railroad.

An examination of the word "connivance" shows its definition to be: "corrupt or guilty assent to wrongdoing, not involving actual participation in it, but knowl-

edge of, and failure to prevent or oppose it," Webster's New International Dictionary; "an agreement or consent, indirectly given, that something unlawful shall be done by another," Bouvier's Law Dict., Rawle's Third Revision; "Connivance with others may be committed by passive permission, or failure to prevent, of helping by not hindering when it is one's duty to prevent, or by negligence or voluntary oversight." Brandon v. Holman, 4 Cir., 41 F.2d 586, 588. This word cannot, without severe strain, be taken to mean "participation through contracting." Simply stated, the complaint alleges only that the Union has permitted, *through failure to prevent*, the existence of the alleged discriminatory practices of the Railroad.

■ As stated by the Supreme Court in Terminal Railroad Ass'n of St. Louis v. Brotherhood of Railroad Trainmen, 318 U.S. 1, 6, 63 S.Ct. 420, 423, 87 L.Ed. 571: "The Railway Labor Act, like the National Labor Relations Act [29 U.S.C.A. § 151 et seq.], does not undertake governmental regulations of wages, hours, or working conditions. Instead it seeks to provide a means by which agreement may be reached with respect to them. The national interest expressed by those Acts is not primarily in the working conditions as such. So far as the Act itself is concerned these conditions may be as bad as the employees will tolerate or be made as good as they can bargain for. The Act does not fix and does not authorize anyone to fix generally applicable standards for working conditions. The federal interest that is fostered is to see that disagreement about conditions does not reach the point of interfering with interstate commerce." This Court, therefore, cannot compel the statutory representative to bargain for certain standards of wages, hours, or working conditions, Terminal Railroad Ass'n of St. Louis v. Brotherhood of Railroad Trainmen, supra, nor, as here, racial equality in the classification of employees.

■ Thus there is a failure of the complaint to allege any violation of that duty as described by the Steele and Tunstall cases, supra, and there is an absence of any rights which have been violated by the Rail-road. At most the complaint, in its original and amended form, alleges a violation of provisions of the Agreement. Any right of action, if one exists, is based on the alleged breach of the Agreement and does not arise under the Railway Labor Act, but only from the consequent contractual relations of the parties. Gully v. First National Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; Malone v. Gardner, 4 Cir., 62 F.2d 15; Barnhardt v. Western Maryland Ry. Co., 4 Cir., 128 F.2d 709; Burke v. Union Pac. R. Co., 10 Cir., 129 F.2d 844. Since this is not an action arising under any Act of Congress regulating commerce, the Court has no jurisdiction under 28 U.S.C.A. § 1337. Nor have the petitioners alleged facts necessary to give the Court jurisdiction under the diversity of citizenship provision, 28 U.S.C.A. § 1332. The question of jurisdiction being decisive, it is not necessary to consider the other motions and respondents' motion to dismiss the action must be granted. It is so ordered.