**J. R. ALABAUGH, W. H. Schaver, J. W. Welman, E. J. Schwenninger, and C. H. Smith, and C. B. Fledderman**

v.

**The BALTIMORE AND OHIO RAILROAD COMPANY, a body corporate, and Brotherhood of Locomotive Engineers, and unincorporated association, and General Grievance Committee of the Brotherhood of Locomotive Engineers on the Baltimore and Ohio Railroad, an unincorporated association.**

**Civ. A. No. 7780.**

United States District Court
D. Maryland, Civil Division.
Oct. 29, 1954.

I. Duke Avnet, Baltimore, Md., and Harold Naughton, Cumberland, Md., for plaintiffs.

Sydney R. Prince, Baltimore, Md., for Baltimore & Ohio Railroad Company.

Bernard M. Savage, Baltimore, Md., and Harold N. McLaughlin, Cleveland, Ohio, for General Committee of Adjustment of the Brotherhood of Locomotive Engineers on the Baltimore and Ohio Railroad.

THOMSEN, District Judge.

The motion to dismiss the complaint in this case raises the question whether the court has jurisdiction over the subject matter, or whether exclusive primary jurisdiction is in the National Railroad Adjustment Board.

Defendant Brotherhood of Locomotive Engineers (Brotherhood) entered into a union shop agreement with defendant Baltimore and Ohio Railroad Company (B & O), effective November 1, 1951. Plaintiffs, locomotive engineers employed by B & O, were members of Brotherhood until August, 1952, when they terminated their membership, stopped paying dues, and joined United Railways Operating Crafts (UROC), a rival union, believing UROC to be a labor organization, national in scope, organized in accordance with the Railway Labor Act, Title 45 U.S.C.A. § 151 et seq., membership in which would prevent their discharge. Brotherhood thereupon expelled plaintiffs, and defendant General Committee of Adjustment of Brotherhood on B & O (Committee) demanded that B & O discharge them. Plaintiffs obtained a hearing before a B & O superintendent. After that hearing, plaintiffs "received information" that UROC was not a qualified union, and applied for reinstatement in Brotherhood, which, according to the complaint, was refused by Brotherhood because plaintiffs had been active in UROC, although other engineers, who had also terminated their membership in Brotherhood but had been less active in UROC, were reinstated. The superintendent decided that B & O was obligated to discharge plaintiffs under the terms of the union shop agreement, and his decision was affirmed on appeal by a higher officer of B & O, who fixed October 8, 1954, as the date for discharge. On that day plaintiffs filed this suit, alleging that defendants' conduct toward them violates Title 45 U.S.C.A. § 152 Eleventh (a) and praying an injunction restraining B & O from discharging plaintiffs and restraining Brotherhood and its Committee from attempting to induce their discharge. I granted and have kept in force a temporary restraining order to preserve plaintiffs' seniority rights.

Committee's motion to dismiss the complaint is based on the contention that this court lacks jurisdiction of the subject matter because "Congress, by enactment of the Railway Labor Act * * * has deprived the courts of jurisdiction to hear and determine any issues (a) pertaining to the grievances of employees against carriers including those for discharge or dismissal from the service of carriers, or (b) pertaining to the inter-

pretation or application of union shop agreements such as the one set forth in the complaint or any action for discharge or dismissal of employees from the service of carriers under such agreements, by making such issues cognizable only by resort, first, to the procedures and tribunals lawfully provided for in such agreements, and second, to the National Railroad Adjustment Board."

Plaintiffs admit that the foregoing quotation states the general rule, but contend that the allegations of discrimination in the complaint, and other matters discussed below, bring this case within the exception to the general rule recognized in Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173, and restore the general jurisdiction of this court under Title 28 U.S.C.A. § 1337.

■ Neither B & O nor Brotherhood has yet filed any motion or answer, but Committee's motion raises the question of jurisdiction of the case as a whole, which would have to be considered by the court in any event. U. S. v. Corrick, 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263; United R. R. Operating Crafts v. Pennsylvania R. Co., 7 Cir., 212 F.2d 938, 940.

Prior to its amendment in 1951, the Railway Labor Act granted to every employee the right to join or not to join a labor organization, and agreements requiring membership or abstinence from membership in such an organization were forbidden; 45 U.S.C.A. § 152 Fourth and Fifth. In January, 1951, Congress enacted the so-called Union Shop Amendment to the Act; 64 Stat. 1238, 45 U.S. C.A. § 152 Eleventh. This amendment authorizes carriers and labor organizations, duly designated and authorized to represent employees

"(a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class: *Provided,* That no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership.

"(b) to make agreements providing for * * * [a check off].

"(c) The requirement of membership in a labor organization in an agreement made pursuant to subparagraph (a) of this paragraph shall be satisfied, as to both a present or future employee in engine, train, yard, or hostling service * * * if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services; * * * *Provided, however,* That as to an employee in any of said services on a particular carrier at the effective date of any such agreement on a carrier, who is not a member of any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services, such employee, as a condition of continuing his employment, may be required to become a member of the organization representing the craft in which he is employed on the effective date of the first agreement applicable to him: *Provided, further,* That nothing herein or in any such agreement or agreements shall prevent an employee from changing membership

from one organization to another organization admitting to membership employees of a craft or class in any of said services. * * *"

The agreement between B & O, et al., and Brotherhood, dated October 15, 1951, effective November 1, 1951, contains the following provision:

"Sec. 1. In accordance with and subject to the terms and conditions hereinafter set forth, all employees of the Carriers now or hereafter subject to the rules and working conditions agreements, as shown on Exhibit 'A', between the parties hereto shall, as a condition of their continued employment subject to such agreements, become members of the Brotherhood within sixty (60) calendar days of the date they first perform compensated service as such employees after the effective date of this agreement, and thereafter shall maintain membership in the Brotherhood."

Sec. 2 of the agreement contains provisions similar to those quoted above from Section 152 Eleventh (c); Sec. 4 of the agreement contains provisions similar to the proviso in Section 152 Eleventh (a); Sec. 5 of the agreement provides that Brotherhood. will notify B & O in writing of any employee who by reason of failure to comply with the terms of said agreement is not entitled to continue in employment; that B & O shall, upon request of the employee, grant him a prompt hearing; and that B & O shall determine "on the basis of the evidence produced at the hearing whether or not the employee has complied with the terms of the agreement, and shall render a decision accordingly" within ten days of the hearing date. Either the employee or Brotherhood may appeal to the highest officer of B & O designated to handle such appeals.

Title 45 U.S.C.A. § 153 First (i) provides:

"The disputes between an employee or group of employees and a carrier or carriers growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions, * * * shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to · handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board * * *."

The Supreme Court has held that since Congress has created an agency especially competent and specifically designated to settle such labor disputes, a court should exercise equitable discretion to give that agency the first opportunity to pass on them, and the extraordinary relief of an injunction should be withheld, at least, until after the administrative proceedings have been completed. Order of Railway Conductors v. Pitney, 326 U.S. 561, 66 S.Ct. 322, 90 L.Ed. 318. In Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, at page 244, 70 S.Ct. 577, at page 580, 94 L.Ed. 795, the court said that the reasoning in the Pitney case "equally supports a denial of power in any court—state as well as federal—to invade the jurisdiction confered on the Adjustment Board by the Railway Labor Act." See also Spires v. Southern Ry. Co., 4 Cir., 204 F.2d 453.

The exclusive primary jurisdiction of the National Railroad Adjustment Board has been recognized in a number of cases brought by UROC and employees of various carriers to obtain injunctions restraining the discharge or requiring the reinstatement of such employees, in which the principal question sought to be raised by plaintiffs was whether UROC is a labor organization national in scope within the meaning of Title 45 U.S.C.A. § 152 Eleventh (c). United Railroad Operating Crafts v. Pennsylvania R. Co., 7 Cir., 212 F.2d 938; United Railroad Operating Crafts v. Northern Pac. Ry. Co., 9 Cir., 208 F.2d 135, certiorari denied 347 U.S. 929, 74 S.Ct. 529; United Railroad Operating Crafts v.

Wyer, D.C.S.D.N.Y., 115 F.Supp. 359, affirmed per curiam, 2 Cir., 205 F.2d 153, certiorari denied 347 U.S. 929, 74 S.Ct. 529; Pigott v. Detroit, T. & I. R. Co., D.C.E.D.Mich., 116 F.Supp. 949, certiorari denied 347 U.S. 944, 74 S.Ct. 639; and Johns v. B. & O. R. Co., D.C.N.D.Ill., 118 F.Supp. 317, affirmed per curiam 347 U.S. 964, 74 S.Ct. 776, injunction dismissed for lack of jurisdiction, 24 Labor Cases, No. 68100, page 85284, note.

And in Bohnen v. B. & O. C. T. R. Co., D.C.N.D.Ind., 1954, 125 F.Supp. 463, a similar case to the case at bar, Judge Swygert held that the administrative proceeding provided by the Railway Labor Act is the only available remedy, and that the court could not assume jurisdiction.

Despite these precedents, plaintiffs contend that this court has jurisdiction because, as they argue, (a) plaintiffs have complied with the statutory requirements, and their discharge would violate the statute; (b) Brotherhood breached its statutory obligation to represent all employees of the craft without discrimination when it refused to reinstate plaintiffs; (c) Brotherhood and B & O did not dispose of the controversy promptly, as required by the Railway Labor Act; and (d) plaintiffs' expulsion from Brotherhood was arbitrary and illegal.

(a) Plaintiffs contend that 45 U.S.C.A. § 152 Eleventh (a), quoted above, authorized a provision requiring them to join Brotherhood or some other qualifying union within 60 days after November 1, 1951, but did not authorize a provision requiring them to remain members of any union thereafter; that the provision in Sec. 1 of the agreement between B & O and Brotherhood requiring maintenance of membership is illegal; and that such illegality gives this court jurisdiction. Committee argues that the provision is not illegal, and that the dispute involves the interpretation or application of an agreement concerning working conditions, United Railroad Operating Crafts v. Wyer, supra, or some other grievance within the exclusive primary jurisdiction of the Adjustment Board.

The question would appear to be one within the exclusive primary jurisdiction of that Board, unless the alleged illegality of the agreement brings the case within the exception to the general rule recognized in Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173; Tunstall v. Brotherhood of Locomotive Firemen & Enginemen, 323 U.S. 210, 213, 65 S.Ct. 235, 89 L.Ed. 187, and Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283, where the discrimination in the contract against Negro employees within the bargaining unit represented by the union created a situation where there was no adequate administrative remedy and gave the court jurisdiction.

The terms of the agreement in the case at bar follow closely the language of the statute, but add the requirement (Secs. 1 and 2) that employees shall maintain their membership in Brotherhood or some other qualified union.

The permissibility of this requirement is clearly implied by the Union Shop Amendment of 1951 to the Railway Labor Act, 45 U.S.C.A. § 152, Eleventh. Maintenance of membership within the contemplation of that amendment means continued payment of dues to the qualifying union. The reason for such requirement is obvious, and is discussed in Pigott v. Detroit T. & I. R. Co., 116 F. Supp. 949, at page 955, note 11. In the case at bar, plaintiffs withdrew from Brotherhood and stopped paying dues to it. For that reason they were expelled by Brotherhood, and are being discharged by B & O. If they had been expelled for other reasons, they could not legally be discharged, but would become "free riders". If an employee could satisfy his total obligation under such an agreement by joining today and quitting tomorrow, there would be no necessity for the protection afforded him by the proviso in section 152 Eleventh (c) to the effect that he may safely change membership from one qualifying or-

ganization to another. If he could resign from all union membership, *a fortiori* he could switch to another qualifying group without needing Eleventh (c). The Act clearly contemplates that obligations of continued union membership as above defined may be imposed.

We are not faced in this case with an agreement illegal in itself, giving the court jurisdiction under the Steele, Tunstall and Howard cases. In those cases it was held that the courts had jurisdiction for two reasons: first, because there was a discrimination against plaintiffs so invidious that the contract between the union and the carrier was illegal; and second, because there was no adequate administrative remedy. The distinction between the Steele, Tunstall and Howard cases and cases such as the case at bar, which involve the " 'interpretation or application of agreements' ", has been made clear in many other decisions; e. g. Spires v. Southern Railway Co., supra [204 F.2d 454]; Hayes v. Union Pacific R. Co., 9 Cir., 184 F.2d 337, affirming D.C., 88 F.Supp. 108; United Railroad Operating Crafts v. Northern Pacific Railroad Co., supra; United Railroad Operating Crafts v. Pennsylvania Railroad Co., supra.

Plaintiffs cite Texas and N. O. R. Co. v. Brotherhood of Railway and Steamship Clerks, 281 U.S. 548, 50 S.Ct. 427, 74 L.Ed. 1034, in support of the proposition that statutory violations of the act entitle the victims to redress in the federal courts. However, that case involved a controversy for the resolution of which no administrative remedy was provided. The case was decided under the 1926 Railway Labor Act. The administrative remedy of the National Railroad Adjustment Board was not established until the 1934 amendment to the Act. The case of Virginian Railway Co. v. System Federation No. 40, 300 U.S. 515, 57 S.Ct. 592, 81 L.Ed. 789, also cited by plaintiffs, involved an action to compel collective bargaining by a carrier. The Railway Labor Act has never provided any administrative remedy for a violation of this statutory duty.

The Supreme Court has now made clear that those decisions are inapplicable where the Railway Labor Act provides an administrative remedy. See General Committee of Adjustment of Brotherhood of Locomotive Engineers for Missouri-K. T. R. R. v. Missouri K. T. R. Co., 320 U.S. 323, 64 S.Ct. 146, 88 L.Ed. 76, and Switchmen's Union of North America, v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61.

(b) Plaintiffs contend that Brotherhood's refusal to reinstate them is a discrimination analogous to the discriminations in the Steele, Tunstall and Howard cases.

In those cases contracts between the union and the carrier were declared invalid because the union had negotiated contracts which clearly discriminated against the Negro members of the bargaining unit solely because of their race.

The situation in our case is quite different. Plaintiffs voluntarily stopped paying dues to Brotherhood and terminated their membership therein, in order to join and be active in a rival union. Plaintiffs gambled heavily for a stake which must have seemed worth the risk to them at that time. By terminating their membership in Brotherhood and ceasing to pay dues to it, they made themselves subject to discharge by B & O under the terms of the union shop agreement, unless they could show that UROC was a labor organization which qualified under section 152 Eleventh (c). They could have hedged their bet by continuing to pay dues to Brotherhood after joining UROC, pending determination of UROC's status. If they had continued to pay dues to Brotherhood, that union might have expelled them for dual unionism, but B & O could not have discharged them, in view of the provisions of section 152 Eleventh (c). They would have continued in their employment as "free riders". But they chose to stake all on UROC. Having lost, they sought reinstatement in Brotherhood.

When plaintiffs applied for reinstatement in Brotherhood, it was within the discretion of that organization whether

or not they should be reinstated. There is no provision in the statute or in the agreement with B & O which requires such action.

The courts cannot require individuals or associations to be forgiving or generous nor prevent the operation of the rule that "they that take the sword shall perish with the sword" unless some constitutional or other legal right or immunity is threatened. Nor does the action of Brotherhood in reinstating some members who had been less active in UROC create any right in plaintiffs to secure an order for reinstatement in this case.

■ So far as Brotherhood's refusal to reinstate plaintiffs affects their discharge by B & O, it is clearly a dispute similar to those which the courts have held to be within the primary jurisdiction of the Adjustment Board. Slocum v. Delaware L. & W. R. Co., supra; Order of Railway Conductors v. Pitney, supra; Bohnen v. Baltimore & O. C. T. R. Co., supra; and other U. R. O. C. cases cited above.

There is no more reason to believe that the Adjustment Board would be more prejudiced or unfair in deciding whether plaintiffs are properly discharged by B & O than it would have been in deciding whether UROC was a labor organization national in scope, within the meaning of section 152 Eleventh (c). See discussion by Circuit Judge Lindley in Johns v. Baltimore & O R. Co., 118 F.Supp. 317 at page 322, and United Railroad Operating Crafts v. Pennsylvania R. Co., 7 Cir., 212 F.2d at page 942. Indeed, the labor members of the Board would naturally be more sympathetic with the claims of the individual engineers in this case than with the direct challenge of a rival union. Only one of the labor members of the Adjustment Board would be a member of defendant Brotherhood, although the other labor members would be members of unions with which UROC competes.

It appears from memoranda of cases before the Adjustment Board submitted to me by counsel for plaintiffs and counsel for committee that in the years since the Steele case the First Division of the Adjustment Board has taken jurisdiction of cases brought by individuals. It further appears that in some of those cases the Board has held that an interpretation of the governing contract agreed upon by the parties thereto (i. e., the union and the carrier) is controlling on the Board. All such cases called to my attention, however, differ basically from the present case in that no discrimination against the complaining parties was claimed. I cannot assume that the Adjustment Board will fail to take jurisdiction in these or any other proper cases, or that it will consider itself bound by the fact that Brotherhood and B & O do not differ as to the proper interpretation or application of the Union Shop Agreement, where one of the questions at issue is whether Brotherhood has discriminated against plaintiffs. The Adjustment Board appears to have decided on the merits the case of Brotherhood of Locomotive Firemen and Enginemen v. Chicago, B & Q R. R. Co. (in re Hanson), Award 16475, Docket 30074, involving the question whether UROC is "national in scope."

B & O has filed a memorandum in which it argues that the National Railroad Adjustment Board would not have jurisdiction in this case to order reinstatement with back pay, after discharge, and therefore that there is no adequate administrative remedy available to plaintiffs. This argument is based (1) upon Sec. 5(e) of the Union Shop Agreement between B & O and Brotherhood, which stipulates:

"Provisions of discipline rules contained in rules and working conditions agreements between the Carriers and the Brotherhood will not apply to cases arising under this agreement."

and (2) upon the fact that the provision in the current rules and working conditions agreement that if it be found that an engineer "has been unjustly suspended or dismissed from the service, such

engineer shall be re-instated with seniority rights unimpaired and compensated for the wage loss" appears as paragraph h in Rule 26, which rule deals generally with procedure in discipline cases.

So, the argument runs: (1) an engineer whose employment is improperly terminated pursuant to the union shop agreement does not have the right of re-instatement under Rule 26; and (2) the Adjustment Board has no jurisdiction to order him reinstated, with pay, for any time lost.

Neither of the conclusions in B & O's argument appears to me to be sound.

It is not clear that Sec. 5(e) of the union shop agreement was intended to eliminate paragraph h of Rule 26, which deals with reinstatement after wrongful discharge. It appears more reasonable that Sec. 5(e) was only intended to eliminate those provisions of Rule 26 which deal with procedure in discipline cases, since other paragraphs in Sec. 5 had provided a different procedure for cases arising under the union shop agreement.

The Union Shop Amendment of 1951, 45 U.S.C.A. § 152 Eleventh, repealed only so much of section 152 Fourth and Fifth as are inconsistent with it. Unless the discharge was proper under the authority of section 152 Eleventh, the provisions of the union shop agreement could not destroy plaintiffs' rights under section 152 Fourth and Fifth, and the provisions of sec. 5(e) of the union shop agreement, quoted above, should not be construed as attempting to do so. The exclusive remedy for violation of rights under section 152 Fourth and Fifth is a proceeding before the Adjustment Board under section 153 First (i).

That paragraph gives the Adjustment Board jurisdiction to consider "disputes between * * * employees and * * carriers growing out of grievances" as well as those "growing * * * out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions". It appears that the Board would have juris-

diction of these cases on either or both of those grounds, and would have power, if it should find that plaintiffs had been improperly discharged, to order reinstatement with back pay under the broad provisions of Section 153 First (o).

B & O appears to be worried lest the plaintiffs should not apply to the Adjustment Board, but elect to sue B & O for damages under the rule in Moore v. Illinois Cent. R. Co., 312 U.S. 360, 61 S.Ct. 754, 85 L.Ed. 1089, recognized in Slocum v. Delaware L. & W. R. Co., 339 U.S. 239, at page 244, 70 S.Ct. 577, 94 L.Ed. 795. If plaintiffs are legally discharged, they will have no right of action; if they are illegally discharged, they may elect what remedy they wish to pursue. The plight of B & O in this case is no different from the plight of the carriers in the other U.R.O.C. cases, cited above, in which the courts held that they were without jurisdiction of the disputes.

The remedy before the Adjustment Board is adequate. It has jurisdiction to declare a discharge improper and to require a railroad to reinstate the employee with back pay. Slocum v. Delaware L. & W. R. Co., 339 U.S. 239 at page 244, 70 S.Ct. 577, 94 L.Ed. 795. There is no lack of administrative remedy here such as existed in the Steele, Tunstall and Howard cases. Until the Adjustment Board acts, plaintiffs cannot show irreparable loss and inadequacy of legal remedy. Order of Railway Conductors v. Pitney, 326 U.S. 561 at page 567, 66 S.Ct. 322, 90 L.Ed. 318.

In Elgin J. & E. R. Co. v. Burley, 325 U.S. 711, 65 S.Ct. 1282, 89 L.Ed. 1886, the real question was whether the union, as agent of the employees, had authority, by virtue of the Railway Labor Act or otherwise, either to compromise and settle accrued monetary claims of certain employees or to submit them for determination by the National Railroad Adjustment Board to the exclusion of their right, after the settlement and after the Board's adverse decision, to assert them in a suit brought for that purpose. That

case is no authority for jurisdiction of this court in this case at this time.

Prevention of discharge is the real relief sought in this case. Whether plaintiffs are reinstated in Brotherhood is incidental. A federal court might have jurisdiction to consider plaintiffs' claim that they have a right to reinstatement, apart from the question of their discharge by B & O, but only upon a showing of jurisdictional facts which do not appear in this case.

■ (c) The fact that the B & O Superintendent delayed more than a year in deciding the questions submitted to him cannot give this court jurisdiction of the subject matter of this case at this time. The Superintendent's decision has been made, and affirmed on appeal. During the entire period involved, plaintiffs were employed by B & O at their regular wages.

(d) Plaintiffs' complaint that they were expelled by Brotherhood without the notice and opportunity to be heard required by sec. 72, et seq., of Brotherhood's statutes applying to explusion after charges, overlooks the facts (1) that plaintiffs themselves terminated their membership in Brotherhood and stopped paying dues to it, and (2) that they were evidently expelled under sec. 63 of Brotherhood's statutes in effect at the time, which provided:

> "Any member failing to pay dues or assessments as per Section 62 of the Statutes, will stand expelled without any action of the Division, unless, upon request in writing, signed by himself, he is carried or excused by the Division."

These allegations do not make a case for jurisdiction in this court under the rule in the Steele case, discussed above.

I conclude that the court lacks jurisdiction of the subject matter, and that the complaint must be dismissed.

With respect to two plaintiffs certain facts are different from those set out above. Plaintiff Fledderman made application for reinstatement in Brotherhood in January, 1953, after he had terminated his membership therein, had stopped paying dues, had been expelled, and had had his hearing before the B & O Superintendent. The local lodge accepted his application, but its action was overruled by the General Chairman, in accordance with Brotherhood rules. Plaintiff Schaver, after such termination, cessation, explusion and hearing, joined the Brotherhood of Locomotive Firemen and Enginemen, a qualified union, "about 1953". The special facts with respect to these two plaintiffs do not require or justify a decision different from the decision in the case of the other plaintiffs.

■ B & O suggests that I grant a temporary injunction against discharge pending appeal by plaintiffs to the Adjustment Board. But I have no right to force plaintiffs to go to the Adjustment Board rather than bring an action for damages. Moreover, since I have found that this court has no jurisdiction over the subject matter of the complaint, such an injunction would be improper. A similar injunction, entered by the District Court in United Railroad Operating Crafts v. Northern Pacific R. Co., 208 F.2d 135, was promptly held improper on appeal by the Court of Appeals for the Ninth Circuit, which remanded the case with directions to dismiss the cause for lack of jurisdiction.

I will sign a decree vacating the restraining order and dismissing the complaint, with costs. But following the precedent in Di Melia v. Bowles, D.C. Mass., 57 F.Supp. 710, I will delay entering such order for one week from this date to give the plaintiffs opportunity to apply for an injunction pending appeal, if they decide to appeal.