N. P. RYCHLIK, individually and on behalf of and as representative of other employees of the Pennsylvania Railroad, Plaintiffs,

v.

BROTHERHOOD OF RAILROAD TRAINMEN, an unincorporated association, Intervening Defendant,

and

Pennsylvania Railroad Company, Defendant.

Civ. 6494.

United States District Court,
W. D. New York.

Feb. 23, 1955.

Motion to Reconsider Denied
March 29, 1955.

Meyer Fix, Rochester, N. Y., for plaintiffs.

Harold J. Tillou, Buffalo, N. Y., for intervening defendant, Brotherhood of Railroad Trainmen.

Adams, Smith, Brown & Starrett, Buffalo, N. Y., for defendant, Pennsylvania R. Co.

KNIGHT, Chief Judge.

The above entitled matter comes before this Court on an order to show cause obtained by the plaintiff why an order should not be made restraining and granting certain injunctive relief against the defendants, Hartman, Sites, and Gaily, individually and as members of and representatives of the Brotherhood of Railroad Trainmen (hereinafter called "BRT") and the Pennsylvania Railroad (hereinafter called "Penn"). By consent of the parties, the BRT was permitted to intervene as defendants in place of the individuals, Hartman, Sites, and Gaily.

The complaint was verified, and attached thereto was an affidavit of the attorney for the plaintiff, purported to be made on knowledge and not on information and belief. It will be seen that numerous matters touching the determination herein are included in the affidavit which are not set forth in the complaint. It seems obvious that the attorney could have no personal knowledge of various of the alleged facts set forth in the affidavit. However, in view of the decision at which I arrive, the affidavit of the attorney will be considered.

The defendants have moved to dismiss the complaint on the grounds that the plaintiff has not set forth a cause of action in his complaint; that the Court has no jurisdiction to determine the alleged issues involved; and that the alleged issues are solely within the determination of the System Board of Adjustment established pursuant to the Railway Labor Act, 45 U.S.C.A. § 151 et seq. As alleged in the Complaint, such employees were discharged by Penn upon notice served on or about January 17, 1955 and, as also alleged in the Complaint, during the year 1953 they "allowed their membership to lapse". The plaintiff timely appealed to the System Board of Adjustment and their appeal was pending until January 17, 1955, when the plaintiff was discharged. The delay apparently was caused by the effort to determine whether membership in the United Railroad Operating Crafts (hereinafter referred to as "UROC") constituted compliance with Union Shop Agreement. Meanwhile the plaintiff continued in his employment till his discharge.

A temporary restraining order was sought, but this was refused since the plaintiff had already been discharged. A permanent injunction is now sought for the reinstatement of the plaintiff and his fellow employees on the ground their discharge for non-compliance with the Union Shop Agreement between the BRT and Penn was illegal. A copy of such Agreement was attached as a part of the Complaint. It appears that plaintiff was a member of UROC at the time of his discharge and as appears from the discharge notice set out in the Complaint that plaintiff was discharged because membership in UROC did not constitute compliance with the Union Shop Agreement. (Exhibit A.) The BRT is a union organization, certified under the Railway Labor Act to represent operating employees of Penn employed as brakemen and conductors on its railroad lines. Plaintiff was a trainman.

On or about the 26th day of March, 1952, BRT and Penn entered into a Union Shop Agreement, pursuant to the provisions of Sec. 2, Eleventh of the Railway Labor Act, as amended. (Exhibit A attached to the Complaint.) Plaintiff asserts that he joined the Switchmen's Union on July 31, 1954 and he present-

ed proof of such membership at a hearing in Pittsburgh, Pa. on August 23, 1954. What his status was as regards UROC then or now does not appear.

In the complaint there is no allegation that the plaintiff became a member of UROC, but the affidavit contains this statement: "In or about February 2, 1953, the plaintiff, Rychlik, resigned his membership from the said BRT and became a member in good standing of the Railroad Operating Crafts, which the plaintiff fully believed in good faith to be a railroad union national in scope."

It is significant that this is made by the attorney for the plaintiff. It also appears from a further statement in such affidavit that plaintiff was a member of the BRT until in or about February, 1953. On August 23, 1954, at Pittsburgh, Penn., the plaintiff presented proofs showing that he had joined the Switchmen's Union of North America on July 31, 1954, and that the plaintiff was a member in good standing in the Switchmen's Union as of the time of the hearing; that since that time he has continued as a member in good standing of the Switchmen's Union of North America, which is recognized as being national in scope. It is alleged that there has been no conclusive determination of the status of the said UROC. On January 3, 1955, plaintiff was notified by the System Board of Adjustments of its decision that he had not complied with the Union Shop Agreement between the Penn and BRT (Exhibit "B" attached to complaint). On January 14, 1955, he was orally notified by the defendant company that he was out of the service. On January 17, 1955, he received a written notification of the termination of his service as of January 14, 1955.

There is nothing in the complaint or affidavit which shows that plaintiff ever resigned membership in the UROC.

Section 153, Title 45, insofar as applicable, provides for the composition of Adjustment Boards and provides:

"§ 153.

"First. * * *

"(h) The said Adjustment Board shall be composed of four divisions, whose proceedings shall be independent of one another, and the said divisions as well as the number of their members shall be as follows:

"First division: To have jurisdiction over disputes involving train- and yard-service employees of carriers; that is, engineers, firemen, hostlers, and outside hostler helpers, conductors, trainmen, and yard-service employees. This division shall consist of ten members, five of whom shall be selected and designated by the carriers and five of whom shall be selected and designated by the national labor organizations of the employees. * * *

"Second. Nothing in this section shall be construed to prevent any individual carrier, system, or group of carriers and any class or classes of its or their employees, all acting through their representatives, selected in accordance with the provisions of this chapter, from mutually agreeing to the establishment of system, group, or regional boards of adjustment for the purpose of adjusting and deciding disputes of the character specified in this section. In the event that either party to such a system, group, or regional board of adjustment is dissatisfied with such arrangement, it may upon ninety days' notice to the other party elect to come under the jurisdiction of the Adjustment Board."

Section 152, Title 45, deals with collective bargaining and agreements between carriers and labor organizations and provides, in part:

"§ 152. * * *

"Fourth. Employees shall have the right to organize and bargain collectively through representatives of their own choosing. The majority of any craft or class of employees shall have the right to determine who shall be the representative of

the craft or class for the purposes of this chapter. * * *

"Eleventh. * * * a labor organization * * * duly designated and authorized to represent employees in accordance with the requirements of this chapter shall be permitted—

"(a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members of the labor organization representing their craft or class: *Provided*, That no such agreement shall require such condition of employment with respect to employees to whom membership in not available upon the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership. * * *

"(c) The requirement of membership in a labor organization in an agreement made pursuant to subparagraph (a) of this paragraph shall be satisfied, as to both a present or future employee in engine, train, yard, or hostling service, * * if said employee shall hold or acquire membership in any one of the labor organizations, *national in scope*, (italics supplied) organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services; * * * *Provided, however*, That as to an employee in any of said services on a particular carrier at the effective date of any such agreement on a carrier, who is not a member of any one of the labor organizations, *national in scope* (italics supplied) organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services, such employee, as a condition of continuing his employment, may be required to become a member of the organization representing the craft in which he is employed on the effective date of the first agreement applicable to him."

In pursuance of the provisions of the Act, the BRT and the Penn entered into an agreement (Exhibit "A" attached to complaint). Subdivisions 5 and 7 of that agreement are pertinent to the issues herein and provide:

"5. (a) The General Chairman of the Brotherhood will, between the fifteenth day and the last day of any calendar month, furnish to the Superintendent of the Division involved, in writing and in duplicate, the name and roster number of each employee whose seniority and employment the Brotherhood requests be terminated by reason of failure to comply with the membership requirements of this agreement.

"(b) In the event that the Superintendent wishes to dispute the correctness of the Brotherhood's position, he shall so notify the General Chairman within ten (10) calendar days of receipt of the notice from the latter, stating the reasons therefor. If no such exception is taken by the Superintendent, or if the General Chairman does not withdraw the notice within ten (10) calendar days from the date of the Superintendent's notice of exception, the Superintendent will transmit to the employee at his last known address through registered United States mail with return receipt requested, the original of the General Chairman's notice, accompanied by an explanatory letter.

"(c) Within ten (10) calendar days from the date of the Superintendent mailing notice to the employee, as provided in paragraph (b) of this Section 5, the said employee's seniority and employment in the crafts or classes represented by the Brotherhood shall be terminated, unless the notice is withdrawn by the Brotherhood in the interim, or unless a proceeding under the provisions of Section 7 of this agreement is instituted.

"7. (a) For the sole purpose of handling and disposing of disputes arising under this agreement, a System Board of Adjustment is hereby established, in accordance with Section 3, Second, of the Railway Labor Act, as amended, which shall consist of four members, two to be appointed by the Carrier and two by the Brotherhood.

"(b) An employee notified in accordance with the provisions of Section 5 hereof that he has failed to comply with the membership requirements of this agreement and who wishes to dispute the fact of such failure shall, if he submits request to the Secretary of the System Board of Adjustment within a period of ten (10) calendar days from the date of mailing of such notice, be given a hearing. The Secretary of the Board will notify the employee in writing the time and place at which such hearing will be held. The hearing shall be confined exclusively to the question of the employee's compliance with the provisions of this agreement. The employee will be required at this hearing to furnish substantial proof of his compliance with the provisions of this agreement.

"(c) The decision of the System Board of Adjustment shall be by majority vote and shall be final and binding."

It appears from the complaint and affidavit herein that this agreement was in effect at the time the plaintiff resigned from the BRT in February of 1953, and that in accordance with that agreement, his grievance was heard before the System Board of Adjustment set up in accordance thereto. The proceedings before said Board were not certified herewith in this action nor was any transcript of the same furnished to the Court; in fact, the complaint itself is silent as to any such proceedings, nor does the prayer of said complaint request that such a review be made by the Court. The affidavit of the attorney for the plaintiff states that the proceedings were conducted before the System Board of Adjustment and that as a result of said proceedings, the discharge of the plaintiff was ordered. (See Exhibit "B" attached to the affidavit.)

■ That courts have reviewed proceedings before the System Board of Adjustment is well established. Edwards v. Capital Airlines, 84 U.S.App.D.C. 346, 176 F.2d 755; Nichols v. National Tube Co., D.C., 122 F.Supp. 726; Washington Terminal Co. v. Boswell, 75 U.S.App. D.C. 1, 124 F.2d 235.

But even in those cases where the court reviewed such proceedings, it was held that judicial inquiry is at an end once it is determined (1) That the Board's procedure and the award conform substantially to the Statute and Agreement; (2) That the award confined itself to the letter of submission; and (3) That the award was not arrived at by fraud or corruption. Farris v. Alaska Airlines, Inc., D.C., 113 F.Supp. 907; Moore v. Illinois Central R. Co., 312 U.S. 630, 61 S.Ct. 754, 85 L.Ed. 1089. There is nothing before the Court from which it can determine that the procedure and finding before the System Board of Adjustment did not conform substantially to the Statute and Agreement or that the finding of the Board was not confined to the matter submitted to it or that the award was arrived at by fraud or corruption. In Bower v. Eastern Airlines, Inc., 3 Cir., 214 F. 2d 623, the court, in reviewing the action of the Board had before it the entire ad-

ministrative record from which it could properly review and pass on the propriety of the same. This Court has not been given the benefit of the record before the Board and of necessity must confine itself to the papers before it. The Court will not consider de novo the circumstances of the discharge of the plaintiff. See Bower v. Eastern Airlines, Inc., supra. This does not mean that in a proper case the court would be foreclosed from considering the essential fairness of the administrative proceeding, even if the issues are raised collaterally, and in a proper case, it would be the duty of the court to determine whether the Board had given the plaintiff a full and fair hearing and exercised its honest judgment in reaching its conclusion.

■ The fact that the agreement between the BRT and the Railroad provides for a System Board consisting of two representatives of the Railroad and two from the Union does not per se make such an agreement invalid. The courts, in recent years, have had before it for review many cases conducted before Boards of a similar structure and have commented that when a Board is so constituted, the award itself is presumably valid, Edwards v. Capital Airlines, supra, but in a proper proceeding is not immune from judicial examination nor is the fact that some member of the Board might be prejudiced or that they might make an erroneous decision sufficient to give the court jurisdiction. There is no allegation in the complaint or proof submitted that any member of the Board so discriminated against the plaintiff as to bring this case within the rule of Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. The Court is not faced with an agreement illegal in itself which might give it jurisdiction under the Steele case, supra. See also Tunstall v. Brotherhood of Locomotive Firemen and Enginemen, 232 U. S. 210, 65 S.Ct. 235, 89 L.Ed. 187 and Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283. The courts have, on many occasions, distinguished between the

Steele, Tunstall, and Howard cases, supra, and cases such as the case at bar which involves the interpretation or application of agreements, and that distinction has been made clear in many decisions, e. g., Spires v. Southern Railway Co., 4 Cir., 204 F.2d 453; Hayes v. Union Pacific Railroad Co., 9 Cir., 184 F.2d 337; United Railroad Operating Crafts v. Northern Pacific Railroad Co., 9 Cir., 208 F.2d 135, certiorari denied 347 U.S. 929, 74 S.Ct. 529, 98 L.Ed. 1081; and United Railroad Operating Crafts v. Pennsylvania Railroad, Co., 7 Cir., 212 F.2d 938.

■ In the instant case, neither the Railroad nor the Brotherhood has filed any answer, but the question of jurisdiction and sufficiency of the complaint have been raised by both, and the Court, in any event, would be bound to consider such questions even if not raised. U. S. v. Corrick, 298 U.S. 435, 56 S.Ct. 829, 80 L.Ed. 1263; United Railroad Operating Crafts v. Pennsylvania Railroad Co., 7 Cir., 212 F.2d 938; and the recent case of Alabaugh v. Baltimore & Ohio Railroad Co., D.C., 125 F.Supp. 401. This Court, on the facts presented, finds no invalidity in the agreement.

■ The plaintiff claims that after his residgnation in the BRT, the BRT refused to reinstate him. There appears to be no grounds for the equitable intervention of this Court for such refusal. A like question was discussed by the court in Alabaugh v. Baltimore & Ohio Railroad Co., supra, wherein the court, 125 F.Supp. at page 407, said:

"When plaintiffs applied for reinstatement in Brotherhood, it was within the discretion of that organization whether or not they should be reinstated. There is no provision in the statute or in the agreement with B & O which requires such action.

"The courts cannot require individuals or associations to be forgiving or generous nor prevent the operation of the rule that 'they that take the sword shall perish with the sword' unless some constitutional or

other legal right or immunity is threatened. Nor does the action of Brotherhood in reinstating some members who had been less active in UROC create any right in plaintiffs to secure an order for reinstatement in this case.

"So far as Brotherhood's refusal to reinstate plaintiffs affects their discharge by B & O, it is clearly a dispute similar to those which the courts have held to be within the primary jurisdiction of the Adjustment Board."

■ The plaintiff also claims that at the time of his discharge, he was a member of the Switchmen's Union of North America, a union "national in scope", recognizable under the Railway Labor Act. Unquestionably, the Act itself does not require any employee to belong to any particular Union as long as it has been recognized as national in scope and the majority of any craft have the right to determine who shall be the representatives of the craft or class, Sec. 152, Title 45 U.S.C.A., and that nothing in any agreement shall prevent the employee from changing membership from one organization to another organization, Sec. 152, Eleventh (c), Title 45 U.S.C.A. It would appear that the Act, however, contemplates the continued membership in a Union national in scope. That the BRT and Switchmen's Union are such is admitted. The plaintiff in the instant case ceased, by his own act, his membership in the BRT and did not join the Switchmen's Union until shortly before his final hearing before the System Board in August 1954, although he had been cited before the Board and given a hearing as early as August of 1953. Judge Thomsen, in the Alabaugh case, 125 F.Supp. at pages 406 and 407, stated:

"*Maintenance* of membership within the contemplation of that amendment means continued payment of dues to the qualifying union. The reason for such requirement is obvious, and is discussed in Pigott v. Detroit, T. & I. R. Co., D.

C., 116 F.Supp. 949, at 955, note 11. In the case at bar, plaintiffs withdrew from the Brotherhood and stopped paying dues to it. For that reason they were expelled by Brotherhood, and are being discharged by B. & O."

And again:

"Plaintiffs voluntarily stopped paying dues to Brotherhood and terminated their membership therein, in order to join and be active in a rival union. Plaintiffs gambled heavily for a stake which must have seemed worth the risk to them at that time. By terminating their membership in Brotherhood and ceasing to pay dues to it, they made themselves subject to discharge by B & O under the terms of the union shop agreement, unless they could show that UROC was a labor organization which qualified under section 152, Eleventh (c). * * * But they chose to stake all on UROC. Having lost, they sought reinstatement in Brotherhood."

■ I therefore hold that the Statute itself contemplates continued membership in a qualified union and that that question was one for proper determination in the first instance by the System Board of Adjustment. The plaintiff, in his brief, has requested this Court to pass on the question as to whether UROC is national in scope.

■ It is not necessary for this Court to decide under the facts submitted in this case whether UROC is a labor organization "national in scope." In fact, that function, under the Railway Act, is left to specific administrative procedure. The National Mediation Board, provided for in Section 154, Title 45 U.S.C.A., and consisting of three public members appointed by the President, is authorized, § 152, Ninth, 45 U.S.C.A. whenever a jurisdictional dispute arises between rival unions, to investigate such dispute and then to certify the union which is to act as bargaining representative for the employees in question. Such certifi-

cations are held to be exclusively within the competency of the National Mediation Board and its decisions are conclusive and not subject to review. Switchmen's Union of North America v. National Mediation Board, 320 U.S. 297, 64 S.Ct. 95, 88 L.Ed. 61; General Committee of Adjustment of Brotherhood of Locomotive Engineers for Missouri-Kansas-Texas Railroad v. Missouri K. T. R. Co., 320 U.S. 323, 64 S.Ct. 146, 152, 88 L.Ed. 76. In the latter case, the court said:

"However wide may be the range of jurisdictional disputes embraced within § 2, Ninth, Congress did not select the courts to resolve them. To the contrary, it fashioned an administrative remedy and left that group of disputes to the National Mediation Board."

The special administrative procedure of Section 153 is therefore vested with exclusive jurisdiction to determine whether a labor organization is national in scope and organized in accordance with the Act when a dispute arises pursuant to the right of the labor organization to participate in the National Railroad Adjustment Board machinery as said in Pigott v. Detroit, T. & I. R. Co., D.C., 1953, 116 F.Supp. 949, at page 954:

"It is the type of issue which those that are conversant with the specialized problems of the railroad industry are most capable of evaluating."

Again, the court, in the Pigott case, remarked:

"If the question of its status were open to the courts, which are located in various areas of the nation, it is conceivable that such different jurisdictions would reach contrary conclusions if concurrent suits with separate carriers were to be litigated."

For the reasons stated herein, the Court denies the application for an injunction pendente lite and the motion to dismiss the complaint is granted. Entry of the order herein, however, will be delayed for the period of one week to afford the plaintiffs opportunity to apply for an injunction pending appeal if they decide to appeal.