**JOHNS**
v.
**BALTIMORE & O. R. CO. et al.**
Civ. No. 53-C-1927.

United States District Court,
N. D. Illinois, E. D.

Jan. 20, 1954.

Cotton, Fruchtman & Watt, Chicago, Ill., for plaintiff.

E. W. Lademann, Chicago, Ill., and Sydney R. Prince, Jr., Baltimore, Md., for defendant, Baltimore & O. R. Co.

Adams, Williamson & Turney, Chicago, Ill., for the defendants intervenors, Brotherhood of Locomotive Firemen & Enginemen.

Clifford D. O'Brien, Solomon Sachs, Chicago, Ill., for Brotherhood of Locomotive Engineers.

The United States Attorney, appeared on behalf of the government.

Before LINDLEY, Circuit Judge, and LA BUY and HOFFMAN, District Judges.

LINDLEY, Circuit Judge.

Plaintiff brought this action to enjoin the enforcement of an order of defendant, Baltimore & Ohio Railroad Company, that plaintiff be discharged from its employ because of non-compliance with a union shop agreement between the Railroad and the intervening defendant Brotherhood of Locomotive Engineers, hereinafter referred to as the Engineers. In the original complaint, reference is made to some eight to ten respects in which the discharge order, and the interpretation of the union shop agreement implicit therein, are said to deprive plaintiff of his rights under the Railway Labor Act, 45 U.S.C.A. § 151 et seq. In accord with its prayer, a temporary injunction was entered by Judge LA BUY, restraining the Railroad from discharging plaintiff during the pendency of this suit.

By leave of court, an amendment to the complaint was filed, adding thereto, a second count, seeking to challenge the constitutionality of Section 2, Eleventh of the Act, 45 U.S.C.A. § 152, Eleventh,

on grounds to be noted infra, and invoking the jurisdiction of a three-judge court under the provisions of 28 U.S.C. § 2282 to decide the constitutional question. Our inquiry concerns the second count only.

The Engineers moved to dismiss the amended complaint on the ground that, (1), plaintiff has not exhausted his administrative remedies, (2), the complaint does not state a cause for relief and, (3), the constitutional question raised is not sufficient to confer jurisdiction upon a three-judge court. The Brotherhood of Firemen and Enginemen, hereinafter referred to as the Firemen, intervenor-defendant by leave of court, answered, challenging likewise the sufficiency of the complaint to raise a substantial constitutional question.

■■ We find it necessary to consider only the jurisdictional question. The existence of a substantial constitutional question is a prerequisite to the jurisdiction of a statutory three-judge court. Ex parte Poresky, 290 U.S. 30, 54 S.Ct. 3, 78 L.Ed. 152; Otten v. Baltimore & O. R. Co., 2 Cir., 205 F.2d 58. In our opinion, no substantial constitutional question is raised by the amended complaint. From facts well pleaded, it appears that plaintiff is, and since 1918 has been, employed by the Railroad as an engineer. A union shop agreement was entered into between the Railroad and the Engineers effective November 1, 1951, which provided that every engineer employed was required within 60 days from that date to become a member of the contracting union unless he should become a member of, or hold a membership in, some other labor organization "national in scope," admitting to membership employees in engine service. As of November 1, 1951, and thereafter until April 1, 1953, plaintiff complied with this agreement by holding a membership in good standing in the Firemen, an organization qualified under the exception noted above. Prior to the latter date, on December 30, 1952, plaintiff became a member of United Railroad Operating Crafts, hereinafter referred to as UROC, and has maintained membership therein continuously since.

In accordance with the provisions of the agreement, and prior to April 29, 1953, the Engineers notified the Railroad that plaintiff's employment should be terminated for his failure to comply with the union shop agreement, namely, by failing to maintain membership in a "national in scope" labor organization. On the date last mentioned, the Railroad notified plaintiff of this charge. Thereafter hearings were held before Railroad officials at which plaintiff was represented by counsel. On September 9, 1953, Mr. Frank J. Goebel, Vice President, Personnel, of the Railroad, found that plaintiff had not complied with the agreement by maintaining membership in any labor organization national in scope. In accord with this decision, the Railroad notified plaintiff that he would be discharged as of September 19, 1953. Thereafter, and prior to his discharge, plaintiff filed this action.

We suspend for the moment the summarization of the amended complaint. Prior to amendment of the Act in 1951, Subsection Fourth of Section 2, 45 U.S. C.A. § 152, Fourth, insured the right of employees to bargain collectively, but granted to every employee the right to join or not to join a labor organization as he saw fit. Subsection Fifth, 45 U.S.C. A. § 152, Fifth, forbade agreements to join or not to join a union as a condition for employment. By amendment, Subsection Eleventh was added to Section 2 of the Act in 1951. 45 U.S.C.A. § 152, Eleventh. This subsection, sometimes herein referred to as the union shop amendment, permits carriers to enter into agreements with labor organizations qualified under the Act to represent railway employees, viz, "(a) to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is the later, all employees shall become members" of the contracting labor organization, provided that this requirement be waived with re-

spect to any employee not admissible to such membership on equal terms as those prevailing for members generally and those to whom membership is denied for any reason besides non-payment of dues. Subsection (c) of the amendment provides that, with respect to operating employees, the condition for employment prescribed by any union shop agreement executed under the provisions of subsection (a) shall be satisfied "if the said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said services [operating services] * * *."

After reciting the facts leading to this controversy, substantially as above stated, the amended complaint avers that plaintiff is an operating employee within the exception provided by subsection (c); that the amendment deprived plaintiff of the right theretofore conferred on him by Section 2, Fourth and Fifth, to join or refrain from joining any labor organization as he saw fit; and that he joined UROC in the good faith belief that it was a labor organization national in scope within the meaning of Section 2, Eleventh (c), and that, therefore, his membership in that organization constituted compliance with the union shop agreement.

The constitutional infirmity said to be revealed by these facts is that the union shop amendment is in violation of the Due Process Clause of the Fifth Amendment to the Constitution, in that the rights of employees to continued employment are made to depend on the phrase "national in scope" which is so vague that reasonably intelligent men can only guess at its meaning; that this infirmity is not cured by construing the phrase as it is used in Section 3 of the Act as a qualification for labor organizations entitled to participate in the selection of members of the National Railroad Adjustment Board, 45 U.S.C.A. § 153, First (a), for it is averred that the phrase, as there used, is equally unconstitutional;

that the provisions of Section 3, First (f), delegating to a three-man board convened by the Mediation Board the power to determine the meaning of the phrase are an unconstitutional delegation to private persons of legislative and judicial powers in violation of Article I, Section 1, Article III, Section 1 and the Due Process Clause of the Fifth Amendment of the Constitution of the United States; that, therefore, Subsections Fourth and Fifth of Section 2 of the Act have never been validly amended; and that the union shop agreement between the Engineers and the Railroad, and plaintiff's threatened discharge are illegal as a violation of those provisions of the Act. In other words, he asserts a vested right in the continuation in force of subsections Fourth and Fifth, although the precise basis for this claim is not entirely clear. He prays for a declaratory judgment that the union shop amendment to the Act is unconstitutional as depriving him of due process of law, that the union shop agreement executed thereunder is invalid and that plaintiff can not be lawfully discharged for non-compliance therewith.

Jurisdiction is challenged by the intervening defendants on the ground that the complaint reveals that no constitutional rights of plaintiff have been violated. It is said that he acquired no vested rights under Section 2, Fourth and Fifth, which could not be abrogated by subsequent legislation; that the crux of the controversy is the interpretation of and application of the union shop agreement, a subject delegated by the Act exclusively to the jurisdiction of the Railroad Adjustment Board, hereinafter sometimes referred to as the Board, 45 U.S.C.A. § 153, First, and that the question whether UROC is a labor organization national in scope is committed exclusively to a three-man board to be appointed by the National Mediation Board after prescribed procedures before the Secretary of Labor, 45 U.S.C.A. § 153, First (f); that, therefore, plaintiff has not exhausted his administrative remedies and the constitutional question is

not ripe for decision; that no substantial constitutional question is presented, inasmuch as the facts well pleaded in his complaint amount to an attack on the union shop agreement, not on the statute; and that the purported attack on the statute is a mere form of words, without substance, adopted by plaintiff in order to invoke the jurisdiction of a three-judge court.

An analysis of the position which plaintiff is forced to assume in order to attempt to raise the constitutional question reveals that defendants' contentions are meritorious. Section 3 of the Act, 45 U.S.C.A. § 153, created the National Railroad Adjustment Board, composed of members selected by the carriers and nationally recognized unions. This Board is given power on petition of either party to a labor dispute between an employee and a railroad to decide the dispute and make awards, including back pay awards enforcible by process in the district courts. The case at bar is one of a great number of similar cases now pending, or decided within the past year, prosecuted by UROC or its members to contest the discharge of its members for non-compliance with union shop agreements. In all of these reported cases, with one exception, the courts have held that this issue is a dispute, within the meaning of Section 3, First (l), cognizable by the Board, and that the courts are without jurisdiction. United R. R. Operating Crafts v. Northern R. R. Co., 9 Cir., 208 F.2d 135; United R. R. Operating Crafts v. Wyer, D.C., 115 F.Supp. 359, affirmed mem., 2 Cir., 205 F.2d 153, petition for certiorari pending; Pigott v. Detroit, T. & I. R. R. Co., D.C.E.D.Mich., 116 F. Supp. 949; Lake v. Baltimore & O. R. Co., S.D.Ohio, March 9, 1953. In UROC v. Pennsylvania R. Co., decided June 29, 1953, the District Court held that the question whether UROC is a union national in scope is a question for the court. It found that UROC was not national in scope and dismissed the complaint for want of equity. An appeal is now pending in the United States Court of Appeals for the Seventh Circuit. Further-

more the Adjustment Board has docketed a proceeding involving a similar dispute, Brotherhood of Locomotive Firemen and Enginemen v. Chicago, B. & Q. R. Co., 1st Div. Docket 3074, and a special Adjustment Board, convened pursuant to the provisions of a union shop agreement, as authorized by Section 3, Second, of the Act has taken jurisdiction to decide a similar dispute. H. J. Stelmack, Baltimore, July 8, 1952. See also, Otten v. Baltimore & O. R. Co., 2 Cir., 205 F.2d 58, in which case a non-operating railroad employee, professing religious scruples against joining a labor union, sought to convene a three-judge court to determine the constitutionality of subsection (a) of the union shop amendment. The court held, that in the absence of accrued vested rights under Section 152, Fourth and Fifth, which could not be abrogated by amending the statute, no substantial constitutional question was stated requiring the convening of a three-judge court.

To circumvent these authorities, plaintiff is forced to anticipate the jurisdictional defenses now urged and attempts to show that, as applied to him, no adequate remedy is afforded him by resort to the Adjustment Board. It is said that the issue presented is not a question arising in a labor dispute growing out of the contract, but a question of statutory interpretation which is beyond the jurisdiction of the Board; that the Board is composed, in part, of members selected by labor organizations hostile to plaintiff's claim; that the statute affords no redress to the courts to review an award of the Board adverse to an employee; and, that, therefore, he would be denied a fair hearing before that body. It is further contended that, if this controversy be found to arise out of a labor dispute, the Board is incompetent to act thereon, on the ground that it is an unconstitutional delegatee of legislative and judicial power.

It is apparent that each of the contentions requires the anticipation of issues which will arise, if at all, only after plaintiff has applied to the Board for re-

lief and its award has been entered. Thus plaintiff states a theoretical grievance, not one based on fact. The facts stated, if valid for any purpose, merely militate against the interpretation and enforcement of the union shop agreement.

In International Ladies' Garment Workers' Union v. Donnelly Garment Co., 304 U.S. 243, 58 S.Ct. 875, 82 L.Ed. 1316, the Supreme Court held similar averments to be without merit, as a basis for convening a three-judge court. Donnelly brought a suit seeking to enjoin the Union, its officers and agents from committing certain acts (picketing, boycotting, etc.) alleged to be in furtherance of a conspiracy in violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and the Clayton Act, 15 U.S.C.A. § 12 et seq. A second union, intervening as a plaintiff, averred that the acts complained of did not grow out of a labor dispute within the meaning of the Norris-LaGuardia Act, 29 U.S.C.A. § 101 et seq., and National Labor Relations Act, 29 U.S.C.A. § 151 et seq., and that those statutes would be unconstitutional if interpreted to require a different conclusion. The court said, 304 U.S. at page 251, 58 S.Ct. at page 880: "The contention of plaintiffs that the Norris-LaGuardia Act was not applicable to the conduct of defendants and would be invalid if otherwise interpreted was but an anticipation of a defense and did not constitute an application for injunction in any proper sense of the term as used in section 3. The only application for an injunction was one to restrain the defendants from committing acts in pursuance of the alleged conspiracy * * *. The statute did not require a decision by three judges upon that application or authorize a direct appeal to this Court." The pertinency of this language to the case at bar is readily apparent.

Furthermore, the existence of the administrative remedy in this case more clearly impels us to hold that no cause is presented for consideration by three judges. That the remedy afforded to an aggrieved employee by Section 3 of the Act must be exhausted before resort is had to the courts has been reiterated in numerous decisions, applying the Act. Of the aim of Congress in creating the Adjustment Board, the court said in Elgin, J. & E. R. Co. v. Burley, 325 U.S. 711, 728, 65 S.Ct. 1282, 1292, 89 L.Ed. 1886, "It [the aim] was to add decision where agreement fails and thus to safeguard the public as well as private interests against the harmful effects of the preexisting scheme." Again, in Order of Railway Conductors v. Pitney, 326 U.S. 561, 567, 66 S.Ct. 322, 325, 90 L.Ed. 318, the court said, "The factual question (in interpretation of a bargaining agreement) is intricate and technical. An agency especially competent * * * to deal with it has been created by Congress. Under these circumstances the court should exercise equitable discretion to give that agency the first opportunity to pass on the issue. Certainly the extraordinary relief of an injunction should be withheld, at least, until then." The reasoning in the Pitney Case was said in Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 244, 70 S.Ct. 577, 580, 94 L.Ed. 795, to require "a denial of power in any court—state as well as federal —to invade the jurisdiction conferred on the Adjustment Board by the Railway Labor Act." See also, Transcontinental & Western Air, Inc. v. Koppal, 345 U.S. 653, 660–662, 73 S.Ct. 906, 97 L.Ed. 1325; Missouri-Kansas-Texas R. Co. v. Brotherhood of Ry. & S. S. Clerks, 7 Cir., 188 F.2d 302; Colbert v. Brotherhood of Railroad Trainmen, 9 Cir., 206 F.2d 9; UROC Cases cited supra. Although the constitutionality of the Board or of its processes was not challenged in any of these cases, in view of the many court decisions which, in many cases, enhance the stature of the Board, we should scrutinize closely any contention of its unconstitutionality. This instant controversy is a dispute cognizable by the Board, and that should put an end to the jurisdiction of this court until plaintiff has there sought his remedy.

The fact that an attack is made on the validity of the Administrative body it-

self does not obviate the necessity of first following to a conclusion the allegedly unconstitutional administrative process. Aircraft & Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796. In this respect the court said, 331 U.S. at page 767, 67 S.Ct. at page 1501, "[T]he courts have no lawful function to anticipate the administrative decision with their own, whether or not when it has been rendered they may intervene either in presumed accordance with Congress' will or because, for constitutional reasons, its will to exclude them has been exerted in an invalid manner." Again 331 U.S. at page 772, 67 S.Ct. at page 1503, the court said, "On the contrary, whatever may be true of other situations, in this case the very fact that constitutional issues are put forward constitutes a strong reason for not allowing this suit either to anticipate or to take the place of the Tax Court's final performance of its function. When that has been done, it is possible that nothing will be left of appellant's claim, * * * concerning which it will have basis for complaint." The latter language is significantly applicable to the case at bar. As in the Hirsch case, plaintiff asserts claims other than those of unconstitutionality which might have disposed of its cause without presenting the constitutional issue.

The burden on plaintiff, under Section 2282, to survive the initial scrutiny of the assembled three-judge court relative to its jurisdiction, is to state facts to show that the constitutional question is squarely presented and must be determined that his cause is, in fact, one to restrain the enforcement of a federal statute. This he can not do until he exhausts his administrative remedy. This is doubly true in this case, wherein a different decision would require the court to impugn, as plaintiff seems to do, the integrity of the Adjustment Board, by presuming that it will act other than fairly and within its statutory and constitutional standards of procedure.

We conclude, therefore, that no substantial constitutional question is presented requiring the action of three judges, and this court should refrain from further action. See 14 Cyclopedia of Federal Procedure (3rd Ed.) Section 73.105, and cases there cited.

The three-judge court is dissolved and the cause returned to Judge LA BUY for further proceedings.