**UNITED RAILROAD OPERATING CRAFTS et al.**

v.

**PENNSYLVANIA R. CO. et al.**

**No. 10914.**

United States Court of Appeals, Seventh Circuit.

May 17, 1954.

Edward J. Fruchtman, Richard F. Watt, Chicago, Ill., Cotton, Fruchtman & Watt, Chicago, Ill., of counsel, for appellants.

Theodore Schmidt, Oscar Lindstrand, Edward B. Henslee, Henry W. Lehmann, Robert E. Harrington, Chicago, Ill., Richard N. Clattenburg, Philadelphia, Pa., Henslee, Monek & Murray, Chicago, Ill., of counsel, for appellees.

Clifford D. O'Brien, Solomon Sachs, Ruth Weyand, Chicago, Ill., amici curiae for Brotherhood of Locomotive Engineers.

Before MAJOR, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

This is an action by the United Railroad Operating Crafts, a railway labor organization hereafter referred to as

UROC, and five of its members to restrain the defendant Pennsylvania Railroad Company, hereafter referred to as the Pennsylvania, from discharging the individual plaintiffs for alleged non-compliance with a union shop agreement between the Pennsylvania and the intervening defendant Brotherhood of Railroad Trainmen, hereafter referred to as the Trainmen. The District Court, after adopting the findings of fact and conclusions of law of a special master to whom the case had been referred, entered a decree dismissing the complaint for want of equity, and from this the plaintiffs appeal.

■ The parties to this appeal either insist or concede that the District Court had jurisdiction of the subject matter of the action. However, the Brotherhood of Locomotive Engineers was granted leave to intervene as *amicus curiae,* both here and in the court below, and it has urged that the District Court was without such jurisdiction. We must, of course, decide a question involving jurisdiction whether or not the parties have raised it. United States v. Corrick, 298 U.S. 435, 440, 56 S.Ct. 829, 80 L.Ed. 1263; Tinkoff v. Holly, 7 Cir., 209 F.2d 527, 529; Jarecki v. Whetstone, 7 Cir., 192 F.2d 121, 124. After careful consideration of the question in this case, we have concluded that the District Court did in fact lack jurisdiction of the subject matter of the action, and the complaint should have been dismissed for that reason.

Prior to its amendment in 1951, the Railway Labor Act, 45 U.S.C.A. § 151 et seq., granted to every employee the right to join or not to join a labor organization, Section 2, Fourth, 45 U.S.C.A. § 152, Fourth, and agreements requiring membership or abstinence from membership in such an organization were forbidden. Section 2, Fifth, 45 U.S.C.A. § 152, Fifth. In January of 1951 Congress enacted the so called union shop amendment of the Act, Section 2, Eleventh, 45 U.S.C.A. § 152, Eleventh. This amendment permits carriers and labor organizations designated and authorized as bargaining representatives "to make agreements, requiring, as a condition of continued employment, that within sixty days following the beginning of such employment, or the effective date of such agreements, whichever is later, all employees shall become members" of the contracting union, with certain exceptions not relevant here. The amendment then further provides that, with respect to operating employees, the requirement of membership in a labor organization as prescribed by any such union shop agreement "shall be satisfied * * * if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said [operating] services * * *."

As permitted by the amendment to the Act, the Pennsylvania and the Trainmen entered into a union shop agreement, effective April 1, 1952, substantially identical in its terms to the pertinent statutory language. It provided that employees in the crafts or classes represented by the Trainmen should, as a condition of their continued employment, become, within sixty days of the effective date of the agreement, and thereafter remain, members of the Trainmen. The agreement further provided that the requirement of membership in the Trainmen should not be applicable to employees "who maintain membership in any one of the labor organizations, national in scope," organized in accordance with the Act and admitting to membership employees of a craft or class in any of the operating services. A System Board of Adjustment was established, in accordance with Section 3, Second, of the Act, 45 U.S.C.A. § 153, Second, to dispose of disputes arising under the agreement, and procedures to be followed in the handling of such disputes were prescribed.

None of the individual plaintiffs were members of the Trainmen on the effective date of the union shop agreement. They did, at that time or subsequently,

hold or acquire membership in UROC. However, after the expiration of the sixty day period following the effective date of the agreement, in accordance with the procedures which it established, the Trainmen requested that the Pennsylvania terminate the employment of the individual plaintiffs for non-compliance; and at their request, the individual plaintiffs were notified that hearings would be held before the System Board of Adjustment to determine the question of their compliance with the union shop agreement. Prior to the date upon which the hearings were to commence, this action was filed.

This is not the only occasion on which UROC or its members have sought to contest judicially the discharge of UROC members for non-compliance with union shop agreements. See, e. g., United Railroad Operating Crafts v. Northern Pac. Ry. Co., 9 Cir., 208 F.2d 135; United Railroad Operating Crafts v. Wyer, D. C., 115 F.Supp. 359, affirmed mem., 2 Cir., 205 F.2d 153; Pigott v. Detroit, T. & I. R. Co., D.C., 116 F.Supp. 949; Johns v. Baltimore & Ohio R. Co., D.C., 118 F. Supp. 317. In the Northern Pacific case [208 F.2d 136] the court held that the District Court lacked jurisdiction to entertain the complaint which involved an interpretation of the phrase "national in scope" as that phrase was used in the collective bargaining agreement between the carrier and the Trainmen. The court in the Wyer case determined that such a dispute was one arising out of the interpretation or application of agreements concerning working conditions and that the Adjustment Board had jurisdiction. In Pigott the court likewise found that it was "without jurisdiction to decide whether U.R.O.C. is national in scope and organized in accordance with the Act * * *." Pigott v. Detroit, T. & I. R. Co., 116 F.Supp. 956. And in the Johns case, which also involved the interpretation of "national in scope" as used in a labor contract, the three-judge court said that the dispute was "cognizable by the Board, and that should put an end to the jurisdiction of this court until plaintiff has there sought his reme-

dy." Johns v. Baltimore & Ohio R. Co., 118 F.Supp. 321.

The problem underlying the dispute involved in this case, as in those just referred to, is whether or not UROC is national in scope. The answer to that question, assuming compliance with the Act and the union shop agreement in other respects, would determine whether or not the provision of the agreement requiring membership in the Trainmen was applicable to the individual plaintiffs, and thus whether or not they could properly be discharged for non-compliance. The master in this case found that UROC was not national in scope at any time during the relevant sixty day period. He therefore recommended that the complaint be dismissed for want of equity, and the District Court so decreed.

 In common with other courts which have considered the matter, we do not think that this question could properly be resolved in the court below. Section 3, First, of the Act, 45 U.S.C.A. § 153, First, confers on the National Railroad Adjustment Board jurisdiction over all disputes between carriers and their employees "growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions * * *." The jurisdiction thus conferred on the Board—or a System Board of Adjustment duly established in accordance with Section 3, Second—is exclusive. That is to say, primary jurisdiction is exclusive with the Board. Slocum v. Delaware, L. & W. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795. The question of the individual plaintiffs' compliance or noncompliance with the union shop agreement was, therefore, a matter solely within the province of the System Board to determine in the first instance. Of course, the Board would necessarily have been required in this case to construe the term "national in scope" in order to fix the status of the employees involved. That descriptive term was not defined by Congress when it enacted the union shop amendment nor by the parties to the agreement here involved; and so far as we know the question of whether UROC

is national in scope, upon which the status of these employees directly depends, was never otherwise determined in a proceeding which would be binding on the Board. However, it is a concept well suited to administrative definition under the Act by a body familiar with the industry. And the Board, whose conceded function is the adjustment of grievances and the interpretation and application of agreements, could not be deprived of its exclusive jurisdiction simply because an incident to its exercise of that function is the interpretation of a term having statutory origin. Regardless of its origin, it is its meaning as used in the contract here which is important.

█ It is conceivable, of course, that the employees here involved, members of UROC, may be at a disadvantage in a non-compliance proceeding before a Board whose labor members belong to unions which are in competition with UROC. See remarks on the operation of the National Railroad Adjustment Board in Comment, 18 U. of Chi.L.Rev. 303. However, the possibility that the members of the Board might be prejudiced or that they might make an erroneous decision is not sufficient to give the court primary jurisdiction of this dispute under the principle of Steele v. Louisville & N. R. Co., 323 U.S. 192, 65 S.Ct. 226, 89 L.Ed. 173. There the collective agreement was invalid because the bargaining representative had breached its statutory obligation to represent all of the members of the craft without race discrimination. Such a violation of duty was held, because of the absence of an adequate administrative remedy, to give a cause of action under the Act to those whose rights the agreement had thus infringed. To the same effect see Tunstall v. Brotherhood of Locomotive Firemen, 323 U.S. 210, 65 S.Ct. 235, 89 L.Ed. 187; Graham v. Brotherhood of Locomotive Firemen, 338 U.S. 232, 70 S.Ct. 14, 94 L.Ed. 22. Cf. Brotherhood of Railroad Trainmen v. Howard, 343 U.S. 768, 72 S.Ct. 1022, 96 L.Ed. 1283.

None of those cases supports the theory that the District Court had jurisdiction in the dispute here involved. There is no claim by the individual plaintiffs in this case of unequal representation or hostile discrimination by the bargaining representative. There is, as we have indicated, a natural conflict of interest between UROC and the labor representatives on the Board. However, there is available under the Act administrative machinery to obviate the possible disadvantage to which that conflict might subject these employees, if its use were desired by UROC.

█ Section 3, First (a) of the Act, 45 U.S.C.A. § 153, First (a), provides that members of the Adjustment Board shall be chosen by the carriers and by those labor organizations, "national in scope," as are organized in accordance with the requirements of the Act. Section 3, First (c), 45 U.S.C.A. § 153, First (c), states that the "national" labor organizations, as thus defined in paragraph (a), shall select the labor members of the Board. Section 3, First (f), 45 U.S.C.A. § 153, First (f), then establishes the procedure to be followed in the event of a dispute over the right of any "national" labor organization to participate, under paragraph (c), in the selection of such labor members. In that case the Secretary of Labor must investigate the claim of the organization seeking to participate. If in the Secretary's judgment the request has merit, he will inform the National Mediation Board accordingly. That body will then, under the terms of the Act, arrange for a board of three to decide whether or not the claimant organization has been organized pursuant to the Act and is otherwise qualified to participate in the selection of the labor members of the Board. This board of three is composed of one member designated by the labor organizations already held duly qualified to participate, one member designated by the claimant organization, and a neutral party selected by the Mediation Board. Its determination is final.

It is evident from these provisions of the Act that only those labor organizations which are national in scope may participate in the selection of labor mem-

bers of the Adjustment Board, though, of course, an organization could have such status without so participating. It is evident also that a request to so participate by any labor organization otherwise entitled necessarily requires that its status be determined by a board of three unless those already held qualified should acquiesce in the claim. In any event, it is apparent from the scheme of the Act that an organization held qualified in either manner to participate in the selection of Board members would also be held national in scope within the meaning of the union shop amendment. Such a determination necessarily would have prospective, universal application.

Apparently UROC has never sought the right to participate in the selection of labor members of the Board. Therefore, its status, whether national in scope or not, has never been so determined. Under the circumstances, the matter can only be left to the Adjustment Board, or a System Board as the case may be, in each dispute involving that question.

The cause is remanded to the District Court with instructions to expunge the decree dismissing the complaint for want of equity, and to enter a decree dismissing the complaint for lack of jurisdiction.