221 F.2d 736
 Paul A. PIGOTT, Eugene E. Murphy, William F. Menard, Frank
R. McNabb, Vincent W. Baumia, Ernest E. Lamb, Harold
Hatcher, Jr., Thomas R. Hall, Paul Evans, henry J. Barrown,
and Milton E. Stone, Plaintiffs-Appellants,
v.
DETROIT, TOLEDO & IRONTON RAILROAD COMPANY, a Corporation,
and Brotherhood of Railroad Trainmen, Defendants-Appellees.
 No. 12143.
 United States Court of Appeals, Sixth Circuit.
 March 4, 1955.
 
 William A. Rhodes, Detroit, Mich. (Edward J. Fruchtman, Richard F. Watt, Cotton, Fruchtman & Watt, Chicago, Ill., on the brief), for appellants.
 Theodore Sachs, Detroit, Mich. (Rothe, Marston, Bohn & Mazey, Detroit, Mich., on the brief), for Brotherhood of Railroad Trainmen.
 Bodman, Longley, Bogle, Armstrong & Dahling, Detroit, Mich., for Detroit, Toledo & Ironton R. Co.
 Before ALLEN, McALLISTER, and STEWART, Circuit Judges.
 McALLISTER, Circuit Judge.
 
 
 1
 Appellants, who are members of the United Railroad Operating Crafts, known as the UROC, filed their complaint against the Detroit, Toledo & Ironton Railroad Company for an injunction to restrain the company from discharging them from employment for having failed to comply with union membership in the Brotherhood of Railroad Trainmen. The complaint was filed after the Brotherhood had submitted charges to the company, setting forth that appellants had not become members of the Brotherhood and had not paid their dues to such organization. The complaint further set forth that a hearing was held before a 'system adjustment board,' consisting of a representative of the railroad and a member of the Brotherhood, which was provided for in a union shop agreement entered into between the railroad company and the Brotherhood; that appellants appeared on the hearing in answer to the charges; and that they were afterward notified that their seniority and employment would terminate on September 22, 1952. In appellants' suit in the district court, the Brotherhood intervened as a defendant and filed a motion to dismiss the complaint. The district court granted the Brotherhood's motion on the ground that, because of the provisions of the Railway Labor Act, 45 U.S.C.A. § 151 et seq., the issues were within the province of the National Railway Adjustment Board, and the court had no jurisdiction to consider the matter. Pigott v. Detroit, T. & I.R. Co., D.C., 116 F.Supp. 949.
 
 
 2
 On appeal, it is contended that the district court was in error in holding that it was without jurisdiction to consider and decide the matters in issue; and this contention is based upon the district court's interpretation of the provisions of the Railway Labor Act and its application to the facts in this case.
 
 
 3
 The Brotherhood is admittedly the bargaining representative of certain crafts and classes of employees of the railway company, as authorized by the provisions of the Railway Labor Act, 45 U.S.C.A. § 152, Fourth. As such bargaining representative, the Brotherhood entered into a union shop agreement with the railroad, pursuant to Section 152, Eleventh, of the Act, in which it was provided that all employees of the crafts and classes represented by the Brotherhood should become members of the Brotherhood within sixty days after their employment or after the effective date of the agreement, whichever was later. Appellants are members of the crafts and classes represented by the Brotherhood in the union shop agreement.
 
 
 4
 The Act excepts from the necessity of joining the bargaining representative (in this case, the Brotherhood) all those employees who belong to another labor organization, 'national in scope' and 'organized in accordance with this chapter.' 45 U.S.C.A. § 152, Eleventh (c). Accordingly, as required by the statute, the union shop agreement also excepted from the necessity of joining the Brotherhood all those employees who belonged to another labor organization 'national in scope' and 'organized in accordance with' the Act.
 
 
 5
 Appellants, as members of the UROC, claimed that under the Act and under the union shop agreement executed pursuant thereto, they are exempted from joining the Brotherhood for the reason that they are members of another union 'national in scope' and 'organized in accordance with the Act.' It is conceded that the UROC is organized in accordance with the Act. The 'system adjustment board,' established by the union's shop agreement to adjudicate disputes arising thereunder, held, however, that appellants had acknowledged their nonmembership in the Brotherhood but had failed to present evidence establishing that their membership in the UROC was membership in a labor organization national in scope. It was in the face of this holding that appellants filed their complaint to forestall their imminent discharge; petitioned the court for a declaratory judgment that the UROC was a labor organization 'national in scope'; and further asked that the railroad be enjoined from discharging them from employment, all of which was denied by the district court when it dismissed the complaint.
 
 
 6
 The Railway Labor Act, in providing for union shop agreements in 45 U.S.C.A. § 152, Eleventh, nevertheless, makes no provision for ascertaining whether or not a labor organization is national in scope; nor is any procedure provided in said section whereby employees of a union may avail themselves of the exception to joining the bargaining organization on the ground that their union is national in scope. The section of the Railway Labor Act relating to union shop agreements, in making an exception to the necessity of joining the bargaining organization, sets forth only that members of a labor organization are excepted from joining a bargaining organization if their organization is 'national in scope.' How, then, is it to be ascertained whether such an organization is national in scope?
 
 
 7
 Appellants say that they will be deprived of due process of law if they are bound by the decision of the 'system adjustment board' provided for in the union shop agreement in this case, since their rights would thus be determined by a tribunal composed of two members-- one, from the railway, and the other, from the Brotherhood, which is the party here seeking to bring about their discharge from employment; and it is submitted that in accordance with due process of law, appellants' rights are not to be determined by persons who are partial or biased, or where a conflict of interest makes such persons incompetent.
 
 
 8
 Is there no fair way, then, under the provisions of the Railway Labor Act, by which it can be determined, in an impartial and equitable manner, whether a labor organization is 'national in scope'? The district court found such a method under the provisions of Section 153 of the Act. These provisions, however, relate to the establishment of the National Railroad Adjustment Board, the manner in which the members thereof are to be selected, and the decision of disputes as to the right of any national labor organization to participate in the selection of the labor members of the Board. It is provided in this section of the Act (45 U.S.C.A. § 153, First (a)) that half of the members of the National Railroad Adjustment Board shall be selected by the carriers, and half, 'by such labor organizations of the employees, national in scope, as have been or may be organized in accordance with the provisions of section 152 of this title.'
 
 
 9
 As above stated in the Act, the labor organizations entitled to select members of the National Railroad Adjustment Board are limited to those 'national in scope.' The Act further provides, in case a dispute arises as to the right of any labor organization to participate in the selection and designation of the labor members of the National Railroad Adjustment Board, that the Secretary of Labor shall investigate the claim of the labor organization contending that it has a right so to participate, and if such claim, in the judgment of the Secretary of Labor, has merit, the Secretary shall notify the Mediation Board accordingly, and within ten days after receipt of such advice, the Mediation Board shall request those national labor organizations theretofore duly qualified to participate in the selection and designation of the labor members of the Adjustment Board to select a representative. 'Such representative, together with a representative likewise designated by the claimant, and a third or neutral party designated by the Mediation Board, constituting a board of three, shall within thirty days after the appointment of the neutral member, investigate the claims of the labor organization desiring participation and decide whether or not it was organized in accordance with section 152 of this title and is otherwise properly qualified to participate in the selection of the labor members of the Adjustment Board, and the findings of such boards of three shall be final and binding.' 45 U.S.C.A. § 153, First (f).
 
 
 10
 There is no question that the above procedure provided by the Act insures a fair determination, by a three-member board, of the question as to the right of a labor organization to participate in the selection of the labor members of the National Railroad Adjustment Board. But appellants contend that Section 153, First (f), of the Railway Labor Act provides machinery for determining whether a labor organization is 'national in scope' in order that it be qualified to participate in selecting members of the National Railroad Adjustment Board, and that such section has no application to the determination whether a labor organization is 'national in scope' within the union shop provision of the Act set forth in Section 152, Eleventh. Appellants declare that the UROC is not interested in selecting members of the National Railroad Adjustment Board, and that such union is not obliged to assert the right to participate in such selection to secure a determination from the three-man Board provided for in that Section, as to whether it is a labor organization 'national in scope,' in order to entitle it to the exemption from joining the Brotherhood as a labor organization 'national in scope' under the union shop section of the Act.
 
 
 11
 But we are of the opinion that appellants are not denied due process of law where there is the right to secure a fair determination whether their labor organization is 'national in scope' available to them, or, rather, to such labor organization, even though the administrative machinery for making such determination must be availed of in proceedings under the Act to qualify for the right to select members of the National Railroad Adjustment Board. The concept whether a labor organization is 'national in scope' is well suited to administrative definition under the Railway Labor Act by the National Railroad Adjustment Board, a body familiar with the industry. As above mentioned, there is available under the Act administrative machinery, if its use were desired by the UROC, to determine whether that labor organization is 'national in scope'; and the determination by the three-man Board, in a proceeding to determine whether the UROC were 'national in scope' and thereby had the right to select members of the National Railroad Adjustment Board, would be conclusive, and have a prospective, universal application, not only with respect to selection of labor members of the Board, but also to the provision exempting such labor organizations from the necessity of joining the bargaining representative. United Railroad Operating Crafts v. Pennsylvania R. Co., 7 Cir., 212 F.2d 938. As Judge Levin observed in his able and comprehensive opinion in the district court in this case, a labor organization cannot, of course, resort to the specific administrative machinery relating to the selection of members of the National Railroad Adjustment Board for the limited purpose of establishing that its members are entitled to the exception to the union shop requirement. The effect of the provisions for participation by a union in the Adjustment Board machinery, as stated by Judge Levin (116 F.Supp. 955), 'is that a labor organization, desirous of qualifying for the exception to the union shop requirement, must also participate in the adjustment board machinery before it can obtain the required stamp of approval' as an organization 'national in scope.' In providing for the selection of labor members of the National Railroad Adjustment Board by labor organizations 'national in scope,' Congress provided machinery to determine, in case of dispute, whether such a union by 'national in scope.' In enacting the subsequent amendment to the Act providing that members of a union, national in scope, are exempt from joining another union which had been selected as bargaining representative, there seems evident the intention on the part of Congress that before a union were entitled to be exempt from the necessity of joining the bargaining representative as an organization 'national in scope,' it must have participated in the Adjustment Board machinery, and have been there recognized as an organization 'national in scope.' As stated by Judge Levin, it is only by insisting on such participation that a clear and concrete standard is available to guide all interested parties as to the status of a labor organization, and further: 'This result is consonant with the intention of the drafters of the union shop amendment that a labor organization shall not be entitled to enlist employees on the basis of the privileged standing accorded to qualified unions in Section 152, Eleventh until it has assumed its fair share of the burdens and responsibilities attendant upon the administration of the Act', including the considerable financial burden required of the labor organizations participating in the administrative machinery of the Railway Labor Act. 'Thus, a labor organization must exert itself, at least to the extent of participation in the adjustment board machinery, before it is so entitled.' Pigott v. Detroit, T. & I.R. Co., D.C.Mich., 116 F.Supp. 949, 955.
 
 
 12
 The question whether appellants' union, the UROC, was 'national in scope,' within the meaning of the union shop agreement entered into between the Brotherhood and the railroad, was an issue solely within the province of the National Railroad Adjustment Board, or, in this case, the system board of adjustment, established in accordance with Section 153, Second, of the Act. United Railroad Operating Crafts v. Pennsylvania R. Co., supra; United Railroad Operating Crafts v. Northern Pacific Ry. Co., 9 Cir., 208 F.2d 135; Alabaugh v. B. & O. Railroad Co., D.C.Md., 125 F.Supp. 401. In Bohnen v. B. & O. Chicago Terminal R. Co. & Brotherhood of Railway Trainmen, D.C.Ind., 125 F.Supp. 463, 465, where the Brotherhood and the railroad had entered into a union shop agreement requiring employees to become members of the Brotherhood or other unions, national in scope and organized in accordance with the Railway Labor Act, members of the UROC brought suit to enjoin their threatened discharge by the railroad, based on the ground that they did not belong to the Brotherhood. In holding that the district court had no jurisdiction in the case and that the controversy was entirely within the province of the Board, Judge Swygert said: 'When the provisions of the agreement are taken into consideration it seems clear that what the plaintiffs are complaining about is conduct of the Brotherhood and the defendant railroad which they say is not in accordance with the terms of the contract. In other words, it is a dispute growing out of an interpretation or application of an agreement concerning working conditions and therefore is the kind of dispute which must be brought before Adjustment Board under Section 3 of the Act for settlement.' To the same effect see Johns v. Baltimore & O.R. Co., D.C.Iii., 118 F.Supp. 317; United Railroad Operating Crafts v. Wyer, D.C.N.Y., 115 F.Supp. 359, affirmed, 2 Cir., 205 F.2d 153; Alabugh v. B. & O. Railroad Co., supra.
 
 
 13
 In conclusion, it may be said that 'it is apparent from the scheme of the Act that an organization held qualified * * * to participate in the selection of Board members would also be held national in scope within the meaning of the union shop amendment.' United Railroad Operating Crafts v. Pennsylvania R. Co., 7 Cir., 212 F.2d 938, 943. 'With the benefit of such a standard, no employee need risk his seniority or his job by having to join a labor organization first and then to wait for an adjustment board or court proceeding before the status of such rival labor organization is adjudicated.' Pigott v. Detroit, T. & I.R. Co., D.C.Mich., 116 F.Supp. 949, 956. 'There is, as we have indicated, a natural conflict of interest between UROC and the labor representatives on the Board. However, there is available under the Act administrative machinery to obviate the possible disadvantage to which that conflict might subject these employees, if its use were desired by UROC.' United Railroad Operating Crafts v. Pennsylvania R. Co. 212 F.2d at page 942. 'In the instant case, the plaintiffs should either have insisted that U.R.O.C. establish its status in the prescribed fashion or have protected their interests by joining the Brotherhood.' Pigott v. Detroit, T. & I.R. Co., 116 F.Supp. at page 956. 'UROC has never sought the right to participate in the selection of labor members of the Board. Therefore, its status, whether national in scope or not, has never been so determined. Under the circumstances, the matter can only be left to the Adjustment Board, or a System Board as the case may be, in each dispute involving that question.' United Railroad Operating Crafts v. Pennsylvania R. Co., 212 F.2d at page 943.
 
 
 14
 With respect to various arguments of counsel for appellants attacking the constitutionality of the provisions of the Railway Labor Act and procedures thereunder, we are of the view that no substantial constitutional question is presented on this appeal. See Shelley v. Kraemer, 334 U.S. 1, 8, 68 S.Ct. 836, 92 L.Ed. 1161; Duignan v. United States, 274 U.S. 195, 200, 47 S.Ct. 566, 71 L.Ed. 996; Johns v. Baltimore & O.R. Co., D.C.Ill., 118 F.Supp. 317, 322. Moreover, there was no abuse of discretion on the part of the district court in refusing to grant a motion to raise the question of the unconstitutionality of the statute and to request the convening of a three-judge court to determine such question, where the motion was not made until after the court had reached its decision.
 
 
 15
 In accordance with the foregoing, the judgment of the district court dismissing the complaint for want of jurisdiction is affirmed upon the opinion of Judge Levin.
 
 
 16
 ALLEN Circuit Judge (dissenting).
 
 
 17
 I regret that I cannot agree with my colleagues. I see no answer to the proposition that the majority opinion recognizes and the judgment leaves in effect the decision of a system adjustment board, a two member tribunal, one member representing the railway, and one member a representative of the adverse and hostile appellee union which is endeavoring to have these appellants discharged from their employment. Such a result contravenes the general rule that if the judge has a bias or conflict of interest, proceedings over which he presides are invalid. Tumey v. State of Ohio, 273 U.S. 510, 522, 47 S.Ct. 437, 71 L.Ed. 749.
 
 
 18
 45 U.S.Code, Section 153, First, 45 U.S.C.A. § 153, subd. 1, provides administrative machinery for adjusting relations between the unions and management. It does not provide for the right of the employee to retain his job if he is a member of a labor organization 'national in scope' and 'organized in accordance with the Act.' That situation is covered in 45 U.S.C. Section 152, Eleventh, 45 U.S.C.A. § 152, subd. 11. To apply the technical administrative provisions of Section 153, First, relating to unions and management, to the simple but all-important guaranties of Section 152, Eleventh, on behalf of the employee, nullifies the Congressional intent and constitutes judicial legislation.
 
 
 19
 The question here is not how the National Railroad Adjustment Board shall be constituted nor whether the appellee union shall have a representative on the National Railroad Adjustment Board which is the general subject of Section 153, First. The question here is whether appellants shall be deprived of their livelihood. Their right not to be deprived of it if U.R.O.C. comes within the classification of Section 152, Eleventh (c) is a valid statutory right falling within the general jurisdiction of the federal court under title 28, Section 1331. The case certainly arises under a law of the United States. It is a right which should be protected by the examination of a court free from bias or conflict in interest and safeguarded by judicial procedure.
 
 
 20
 It has recently been held that a federal court is empowered to determine whether a labor organization is a 'national or international organization.' An administrative tribunal had held that the organization in question did not fall within the purview of the statutory phrase, but the Supreme Court affirmed a federal court decision which determined otherwise. N.L.R.B. v. Highland Park Mfg. Co., 341 U.S. 322, 71 S.Ct. 758, 761, 95 L.Ed. 969. It is equally appropriate for a federal court to determine whether a labor organization is 'national in scope.' The expertise demanded in one case is no greater than in the other. If Congress intended the adjectives used in the quoted phrases, Section 152, Eleventh, to have other than their ordinary civil meaning it would have given them a special meaning by definition. N.L.R.B. v. Highland Park Mfg. Co., supra.
 
 
 21
 The District Court should hear the evidence, construe the meaning of the statutory phrases 'national in scope,' and 'organized in accordance with the Act', and determine whether U.R.O.C. comes within that classification.