274 F.2d 507
 Edwin E. LATHAM, Arthur Combs, Beecher H. Steele, Dennis J.
Clark, James Devine, Harry P. Schaeffer, James R. Willhoit,
Elmer F. Derry, Robert E. Feldman and Carl Lennox,
Plaintiffs-Appellants, and H. L. Kester, Jr., Plaintiff,
v.
BALTIMORE AND OHIO RAILROAD COMPANY, Defendant-Appellee,
Brotherhood of Railroad Trainmen, an
Unincorporated Association, et al.,
Third-Party Defendants-Appellees.
 No. 66, Docket 25731.
 United States Court of Appeals Second Circuit.
 Argued Nov. 18, 1959.
Decided Jan. 15, 1960.
 
 S. R. Prince, Baltimore, Md. (William C. Combs, Rochester, N.Y., on the brief), for defendant-appellee Baltimore and O.R. Co.
 Charles J. McDonough, Buffalo, N.Y. (Wayland K. Sullivan, Cleveland, Ohio, for Brotherhood of Railroad Trainmen, Harold C. Heiss and Russell B. Day, Cleveland, Ohio, for Brotherhood of Locomotive Firemen & Enginemen, on the brief), for third-party defendats-appellees, the Brotherhoods.
 Before MAGRUDER, MEDINA and FRIENDLY, Circuit Judges.
 MEDINA, Circuit Judge.
 
 
 1
 Plaintiffs, former employees of the defendant-appellee Baltimore and Ohio Railroad Company, and former members of the third-party appellees, the Brotherhood of Railroad Trainmen and the Brotherhood of Locomotive Firemen & Enginemen, appeal from a summary judgment dismissing their complaint with prejudice. The claims of certain other plaintiffs, also former employees of the B & O and former members of the Brotherhoods, were reserved for trial and the partial judgment appealed from was entered pursuant to the procedure prescribed in F.R.Civ.P., rule 54(b). We understand from the briefs that a cross-appeal by the Brotherhoods has been withdrawn and it is dismissed, without costs.
 
 
 2
 On October 1 and November 1, 1951 union shop agreements with B & O, negotiated by BRT and BLFE as collective bargaining agents, as authorized by the Railway Labor Act, as amended, 64 Stat. 1238 (1951), 45 U.S.C.A. 152, Eleventh (a) and (c), became effective. Appellants were already members of BRT and BLFE or became members shortly thereafter. While the maintenance of union membership was made 'a condition of their continued employment,' the statute as amended also provided that this condition would be satisfied 'if said employee shall hold or acquire membership in any one of the labor organizations, national in scope, organized in accordance with this chapter and admitting to membership employees of a craft or class in any of said (railroad) services.' During the year 1952 and thereafter appellants voluntarily withdrew from the Brotherhoods, no longer paid dues and ceased to be members of these two unions. Prior to the initiation of any of the administrative proceedings designed to terminate their employment by B & O appellants joined a rival union, United Railroad Operating Crafts, believing that it was 'national in scope,' and organized in accordance with the statute, and that membership in UROC was a compliance with the condition specified in the statute. It was not until February 25, 1957 that the Supreme Court decided in Pennsylvania Railroad Company v. Rychlik, 352 U.S. 480, 77 S.Ct. 421, 422, 1 L.Ed.2d 480, that UROC was not 'national in scope,' as defined in the 1951 Amendment above referred to.
 
 
 3
 In the meantime, the Brotherhoods contended that membership in UROC was not a sufficient maintenance of union status to protect the employment of appellants by B & O. Accordingly, appellants were cited by the Brotherhoods for failure to maintain union membership as required by the union shop agreements, the usual notices were sent, hearings were demanded in due course by each of the appellants and these hearings were held. In each case it was proved that the employee had voluntarily withdrawn from the Brotherhood of which he had previously been a member, that he had not paid his dues, and that he had joined UROC. Appellants offered no proof of any alleged discrimination by the unions. In due course each of the hearings resulted in decisions adverse to appellants, and most or all of them appealed. Finally, the disputed issue was submitted to the National Railroad Adjustment Board and the proposed action of the carrier in terminating the employment of appellants was 'sustained.' During the pendency of these appeals a number of other B & O employees left UROC and some of them were taken back into the fold by the Brotherhoods. The result of each of the administrative proceedings commenced against appellants was the termination of the employment of each of them by the B & O in the months of March, April and May of 1956; and the basis of such termination in each case was that they had not paid dues to and had ceased to be members of the Brotherhoods, facts which appellants had never denied. The sole issue at any time tendered by any of appellants in these administrative proceedings was that membership in and payment of dues to UROC was a sufficient union membership to protect employment by the railroad. The incidental references to the reinstatement of some railroad workers in the testimony in one or two of the appeals records have, we think, no significance.
 
 
 4
 On June 1, 1956 this action was commenced and the judgment prayed in behalf of each appellant was for money damages for wrongful discharge. The sole defendant was the B & O; no claim whatever was at any time asserted by appellants against the Brotherhoods in the District Court. As the employment of each appellant had been terminated at the behest of the Brotherhoods, as above stated, the B & O asserted a third-party claim against the Brotherhoods, the general effect of which was to pray for judgment against the Brotherhoods in the amount of any recovery by appellants on the theory that the termination of appellants' employment was due solely to proceedings initiated by the Brotherhoods and prosecuted in accordance with the terms of the union shop agreements.
 
 
 5
 Appellants contend: (1) that they should have been permitted to try out the alleged issue of whether or not they were dismissed from employment not for non-payment of dues but as a measure of discrimination against them because they joined UROC; and (2) that their allegation that membership in the Brotherhoods was not available to them upon the same terms and conditions 'as are generally applicable to any other member' and that B & O had knowledge of this presents a triable issue because they claim to be able to prove that applications for reinstatement by the Brotherhoods had been denied or would have been denied to these appellants whereas others who left the Brotherhoods and joined UROC were taken back.
 
 
 6
 The pertinent allegations of the complaint are:
 
 
 7
 14. At the time when the defendant issued its final order of discharge, it, through its agents and employees, well knew that the plaintiffs had applied to the respective Brotherhoods for membership and that membership was not available to them.
 
 
 8
 15. The Brotherhoods, acting as bargaining representatives for the respective classes to which the plaintiffs belonged have complained to the defendant and other carriers about large numbers of their members who resigned membership and became members of United Railroad Operating Crafts, a union national in scope and organized in accordance with the provisions of the Railway Labor Act, which these plaintiffs joined. Plaintiffs joined said UROC as did hundreds of others, believing in good faith that it was a labor organization, membership in which, under the terms of the Railway Labor Act, would preclude their discharge under any Union Shop Agreement. Plaintiffs allege that said UROC is a labor organization national in scope and subject as a matter of law to be recognized as such, so that membership therein precludes the discharge of the plaintiffs under the said purported Union Shop Agreement. The Brotherhoods representing the respective classes and crafts of employees to which the plaintiffs belonged, have, however, readmitted and reinstated many of these said employees, but unreasonably and unjustifiably discriminated against plaintiffs in refusing to reinstate them and accept them to membership, all to the knowledge of the defendant.
 
 
 9
 While diversity is alleged and not denied in the B & O answer, the claim argued before us is one of federal right asserted under the Railway Labor Act, a wrongful discharge 'in violation of their rights under Section 152' of the Railway Labor Act (complaint, paragraph 16). The anomaly is that the main thrust of the claim as originally formulated, revolving around the contention that UROC was a union 'national in scope,' is now necessarily abandoned and peripheral allegations are now relied upon to spell out a violation of the statute. In any event, we shall assume arguendo that appellants' claim is based not only on an alleged violation of the statute, but also on an alleged breach by the railroad of the union shop agreements. Whether the action is viewed as one for wrongful discharge in breach of the union shop agreements or for wrongful discharge in violation of the Railway Labor Act the problem is virtually the same, as the provisions of the statute are substantially incorporated in the agreements.
 
 
 10
 In support of their contentions appellants rely upon our decision in Cunningham v. Erie R. Co., 2 Cir., 1959, 266 F.2d 411, 412. There we found there was a triable issue, whether Cunningham's union membership had or had not been terminated for a 'reason other than the failure of the employee to tender the periodic dues.' As this issue had not been resolved in the findings made in the District Court after a non-jury trial, we remanded the case for retrial. We are at a loss to perceive how this ruling in Cunningham helps appellants. There could not possibly have been any discrimination connected with their voluntary act of resigning from the Brotherhoods in order to join UROC.
 
 
 11
 Until 1951 the Railway Labor Act did not permit union shop agreements in the industry. Because the Congress considered it unfair that non-union members should enjoy the benefits of the union's efforts in collective bargaining without paying any of the costs Section 152, Eleventh of the Act was enacted and the union shop was authorized. Thus 'labor organizations duly designated and authorized to represent employees' were permitted to make agreements requiring 'as a condition of continued employment' that all employees shall within sixty days 'following the beginning of such employment, or the effective date of such agreements * * * become members of the labor organization representing their craft or class.' We are particularly concerned with the clause that follows, in Eleventh (a):
 
 
 12
 'Provided, That no such agreement shall require such condition of employment with respect to employees to whom membership is not available upon the same terms and conditions as are generally applicable to any other member or with respect to employees to whom membership was denied or terminated for any reason other than the failure of the employee to tender the periodic dues, initiation fees, and assessments (not including fines and penalties) uniformly required as a condition of acquiring or retaining membership.'
 
 
 13
 Here the appellants were all members of the Brotherhoods within the sixty day period; they became and remained members of the union on the same terms and conditions as all the other members until they resigned; membership was not denied for failure to tender dues, initiation fees or assessments, as is established by the fact that they were members; and their membership terminated only by their own voluntary withdrawal and failure to continue paying the periodic dues. Accordingly, as held by Judge Burke in this action against the B & O for wrongful discharge, any denials by the Brotherhoods of applications for re-admission to membership in the Brotherhoods were 'not pertinent to the issues in this case.'
 
 
 14
 Thus we arrive at the same conclusion as did the Seventh Circuit in McNamar v. Baltimore & Ohio Chicago Terminal R. Co., D.C.N.D.Ind.1957, 153 F.Supp. 835, affirmed, 7 Cir., 1958, 254 F.2d 717; and Shiels v. Baltimore & Ohio Railroad Co., D.C.S.D.Inc.1957, 154 F.Supp. 917, affirmed on the reasoning of the District Court, 7 Cir., 1958, 254 F.2d 863, certiorari denied 358 U.S. 846, 79 S.Ct. 71, 3 L.Ed.2d 80, rehearing denied 358 U.S. 896, 79 S.Ct. 155, 3 L.Ed.2d 123. These were also cases where railroad workers had resigned from the Brotherhoods and joined UROC; and Judge Burke relied upon them in granting summary judgment against appellants.
 
 
 15
 The comment by Chief Judge Swygert in McNamar, which incidentally was an action against both the railroad and the Brotherhood, 153 F.Supp. at page 839, and quoted in the reasoning of the District Court approved by the Seventh Circuit in Shiels, is equally applicable to appellants in the case before us. He said:
 
 
 16
 'Once it becomes apparent that the plaintiff initially, voluntarily and deliberately breached the Union Shop Agreement, the motives which prompted the defendants to act within their contractual and statutory rights are immaterial.'
 
 
 17
 This is a far cry from Cunningham. The plain fact of the matter is that there never was any genuine issue in the case other than the dispute concerning the status of UROC as a union 'national in scope.' When Rychlik was decided by the Supreme Court this issue was disposed of with finality and appellants' case collapsed.
 
 
 18
 We turn to the question whether, in view of the ruling of the National Railroad Adjustment Board sustaining the proposed action of the railroad in terminating the employment of appellants, the District Court was competent to decide the case. If not, we should of course direct a dismissal for lack of jurisdiction rather than affirm the judgment appealed from. The solution of this problem depends upon the answer to a very simple question: does the dispute grow 'out of grievances or out of the interpretation or application of' the union shop agreements or is it a question of statutory interpretation? We held in Cunningham that the District Court was competent to decide his case, and that exclusive jurisdiction had not been conferred upon the National Railroad Adjustment Board by 45 U.S.C.A. 153, because, 266 F.2d at page 416:
 
 
 19
 'The allegations and the proof demonstrate that what Cunningham is doing in this action is questioning the validity of the collective bargaining agreement as applied to the circumstances of his dismissal, rather than the 'interpretation or application' of the agreement.'
 
 
 20
 Thus Cunningham presented a question of statutory interpretation and so is the issue now before us in this case a question of statutory interpretation, at least insofar as concerns appellants' principal contentions. Moreover, despite earlier conflicting decisions by the Courts of Appeals in various circuits, we think the disputed question of law was settled by the Supreme Court in Rychlik. The status of UROC under the 1951 Amendment was a question of statutory interpretation. Nevertheless, in Pigott v. Detroit, Toledo & Ironton Railroad Company, 1955, 221 F.2d 736, the Sixth Circuit held that this question 'was an issue solely within the province of the National Railroad Adjustment Board, or, in this case the system board of adjustment, established in accordance with Section 153, Second, of the Act' (221 F.2d at page 741). Despite a vigorous dissent by Judge Allen, to the effect that there was a claim of 'a valid statutory right,' within the competence of a federal court to decide, the Sixth Circuit in Pigott affirmed a judgment dismissing the complant 'for want of jurisdicton.' It was the conflict between our decision in Rychlik, which incidentally held that the District Court did have jurisdiction, and the decision of the Sixth Circuit in Pigott that led to the granting of certiorari in Rychlik, 352 U.S. at pages 483-484, 77 S.Ct. at pages 422, 430, 1 L.Ed.2d 480. In deciding Rychlik, however, the Supreme Court reversed and remanded to the District Court 'with instructions to dismiss the complaint,' but not for lack of jurisdiction. Indeed, the principal basis for the separate concurring opinion by Mr. Justice Frankfurter in Rychlik was that he thought the complaint should have been dismissed for lack of jurisdiction and not on the merits. It is also interesting to note that Mr. Justice, harlan, writing for the Court in Rychlik refers to the distinction between a claim of right under the statute and one based upon an interpretation of a collective bargaining agreement, where it is asserted 'that the contract conferred on him (plaintiff) rights wider than those given as a matter of federal right by the statute.' He continues in footnote 11 of 352 U.S. at page 485, 77 S.Ct. at page 424: 'On such a cause of action federal jurisdiction would depend on showing diversity of citizenship.'
 
 
 21
 We agree with Judge Burke's decision that the District Court had jurisdiction to decide this case on the merits.
 
 
 22
 We have given careful consideration to the great variety of miscellaneous points argued in the briefs filed by the respective parties. Most of them are so lacking in merit that we shall pass them by without comment. We shall discuss one of them briefly by way of elucidation for future reference.
 
 
 23
 Appellants argue that we disagreed in Cunningham with the reasoning of the Fourth Circuit in Alabaugh v. Baltimore & Ohio Railroad Co., 1955, 222 F.2d 861, and that, consequently, we must disagree with Judge Burke's holding that 'Conley v. Gibson, 355 U.S. 41 (78 S.Ct. 99, 2 L.Ed.2d 80), is not applicable to the facts of this case.' This is an egregious non sequitur.
 
 
 24
 Both Alabaugh and Conley involved controversies between railroad workers and unions. In Conley it was held that if the allegations of the complaint to the effect that there had been discrimination by the union against negro workers were true 'there has been a manifest breach of the Union's statutory duty to represent fairly and without hostile discrimination all of the employees in the bargaining unit' (355 U.S. at page 46, 78 S.Ct. at page 102). The Court reversed a ruling that the National Railroad Adjustment Board had exclusive jurisdiction over the controversy, held it was error for the courts below to dismiss the complaint for lack of jurisdiction, and remanded the case for trial. In Cunningham also there was a controversy between a railroad worker and a union, and a claim that the union had breached its statutory duty to represent Cunningham fairly and without hostile discrimination. The railroad was made a party because Cunningham prayed for reinstatement. There also it was contended that the National Railroad Adjustment Board had exclusive jurisdiction and we were urged to follow Alabaugh, where the claim of a railroad worker that he had been discriminated against by the union for joining UROC was dismissed for lack of jurisdicton. What we disagreed with and refused to follow was the following ruling in Alabaugh at 222 F.2d at page 867:
 
 
 25
 'Logically it may seem that if a court has jurisdiction to protect rights against racial discrimination it should have jurisdiction to protect them against discrimination on account of union membership; but the answer is that the Adjustment Board was not set up to deal with racial controversies, but controversies arising out of labor relationships.'
 
 
 26
 What we said on the subject in Cunningham is as follows (2 Cir., 266 F.2d at page 415):
 
 
 27
 'When the scope of this exception to exclusive administrative competence was sought to be extended to cases other than those involving discrimination based upon race or color, the Fourth Circuit resisted in Alabaugh v. Baltimore & O.R., 1955, 222 F.2d 861. Cf. Colbert v, Brotherhood of Railroad Trainmen, 9 Cir., 1953, 206 F.2d 9. But the language used by the Supreme Court is not nearly so restrictive. See Conley, 355 U.S. at page 46, 78 S.Ct. at page 102; Steele, 323 U.S. at pages 199-204, 65 S.Ct. at pages 230-232. And several courts have reahced a directly opposite conclusion. (Citing cases.)'
 
 
 28
 While Cunningham is a negro, the discrimination he complained of had nothing to do with his race. We thought the distinction made in Alabaugh was not only illogical but erroneous, and we are still of the same view.
 
 
 29
 But here we have no controversy between appellants and the union; and the claim of discrimination is on this record wholly lacking in substance.
 
 
 30
 Affirmed.