229 F.2d 171
 N. P. RYCHLIK, individually, and on behalf of those similarly situated, Appellant,
v.
PENNSYLVANIA RAILROAD COMPANY, Defendant-Appellee, and
Brotherhood of Railroad Trainmen, Intervenor-Appellee.
 No. 114.
 Docket 23709.
 United States Court of Appeals Second Circuit.
 Argued November 17, 1955.
 Decided January 9, 1956.
 
 Meyer Fix, Rochester, N. Y., for plaintiffs-appellants.
 Norman M. Spindelman, Rochester, N. Y., for appellant.
 Richard N. Clattenberg, Philadelphia, Pa., Percy R. Smith, Buffalo, N. Y., for appellee, Pennsylvania R. Co., Adams, Smith, Brown & Starrett, Buffalo, N. Y., of counsel.
 Harold J. Tillou, Buffalo, N. Y., for Union.
 Before HAND, FRANK and MEDINA, Circuit Judges.
 HAND, Circuit Judge.
 
 
 1
 The plaintiff appeals from a judgment, summarily dismissing his complaint against the defendant Railway and the intervening Union (a trades-union of railway conductors and brakemen). The complaint alleged that the plaintiff had been employed as a "trainman" of the Railway at a time when he was a member of the Union, from which he resigned in February, 1953, and in which other "trainmen," on whose behalf he sued, as "similarly situated," had allowed their membership to lapse. Shortly thereafter the plaintiff and the others, "similarly situated," joined another union, which it will be convenient to call U.R.O.C., and which they supposed to be "national in scope." The Railway and the first union had executed a Union Shop Agreement under subdivisions Eleventh, (a) and Eleventh, (c), of § 152 of Title 45 U.S.C.A., which required employees to keep up their membership in the Union, or in another union, "national in scope," in order to be eligible as employees of the Railway. In execution of this contract the Union and the Railway had set up a "System Board of Adjustment" under § 153, Second, of Title 45, to appear before which the "Union" cited the plaintiff, and which after a hearing decided that membership in "U.R.O.C." was not a compliance with the Union Shop Agreement. This resulted in depriving the plaintiff and the others, "similarly situated," of employment by the Railway, and he brought this action to procure reinstatement in the Union and reemployment by the Railway.
 
 
 2
 The plaintiff assumes that the District Court has jurisdiction to issue a mandatory injunction compelling the defendants to accept the plaintiff as a member of the Union and as an employee of the Railway; but we need not decide more at this stage of the case than that in any event the action may stand as one for a declaratory judgment under § 2201, Title 28, U.S.Code. There is an "actual controversy within its" (the District Court's) "jurisdiction," for the plaintiff claims the right to membership and employment by virtue of statutes of the United States.[1] Section 2202 allows us to reserve our decision as to what "necessary or proper relief * * * may be granted," if he proves his case upon a trial.
 
 
 3
 The plaintiff raises two objections to the award of the "System Board": (1) it had no jurisdiction over disputes between a union and its members or past members; and (2) the particular board here involved was disqualified to decide the issues, because two of its four members were members of the Union which the plaintiff and his fellows had abandoned in order to join "U.R.O.C." Our decision in United Railroad Operating Crafts v. Wyer, 2 Cir., 205 F.2d 153, affirming on his opinion Judge Conger's dismissal of the complaint — D.C., 115 F.Supp. 359, is an answer to the first point. It is true that the case involved the jurisdiction of the National Adjustment Board, and not that of a "System Board," but subdivision § 153, Second, gives to such boards authority to adjust and decide "disputes of the character specified in this section": that is, in subdivision First, which defines the authority of the National Adjustment Board. Indeed, independently of that decision as a precedent, we should have no doubt that the dispute at bar was within § 153, First, (i), as a dispute "between an employee or group of employees and a carrier * * * growing out of * * * the interpretation or application of agreements concerning * * * working conditions." How far the award of the "System Board," constituted as it was, is exempt from judicial review is indeed a different matter, upon which the courts do not appear to be in entire accord. All that we decided in United Railroad Operating Crafts v. Wyer, supra, was that an aggrieved union or employee must in any event first resort to the appropriate panel — in that case a panel of the National Adjustment Board — before it may apply to a court. Since, however, the text of § 153 applies without reserve to the occasion at bar, the award of the "System Board" will be final, unless either it is proper to imply an exception when half its members are members of the recognized union; or, if that be an unwarranted interpolation, then unless the section is pro tanto unconstitutional.
 
 
 4
 The defendants rely upon the decisions of the Seventh and Sixth Circuits in United Railroad Operating Crafts v. Pennsylvania Railroad, 7 Cir., 212 F.2d 938, and Pigott v. Detroit, T. & I. R. R. Co., 6 Cir., 221 F.2d 736. In the first of these the only actual holding was that the "primary jurisdiction" of such disputes as that at bar was in the "System Board";[2] but the court went on to discuss the question whether a "competing" union, which the aggrieved employee asserted to be within § 152, Eleventh, (c), was "national in scope," might be decided in a proceeding under § 153, First, (f). The court did not indeed say that such a proceeding was an adequate remedy for any bias of the "System Board"; but we are in doubt as to what other significance the discussion was meant to have. At any rate the Sixth Circuit in the later case had before it an action brought after the employee had failed before the "System Board," in which he and the "competing" union both protested against the ruling of the board because of its presumptive bias; and the court plainly held that a proceeding under § 153, First, (f) was an adequate remedy. That decision is flatly in favor of the defendants at bar, and if the appeal is to succeed, we must interpret the Act differently, or declare it unconstitutional. Before discussing that question it will make our position plainer, if we say what we understand this supposed alternative remedy to be.
 
 
 5
 Subdivision (a) of § 153, First, prescribes as one among the qualifications of a union that is to be an elector of unions representing employees in panels of the National Adjustment Board, that it shall be "national in scope." In case a union's claim to be chosen as an elector is disputed, § 153, First, (f) declares that the Secretary of Labor shall first investigate the claim, and, if he decides it "has merit," that he shall notify the Mediation Board. That board will then ask those unions already qualified as electors to select one of their members to serve upon a "board of three" to pass upon the dispute, the applicant itself will select another member, and the Mediation Board will select the third. If the "board of three" grants the application of the union, it will necessarily have found that it is "national in scope"; and the argument appears to be that that is an adequate remedy for any bias of the "System Board," apparently because the finding of the "board of three" on that issue will be final.
 
 
 6
 With deference we cannot agree with this reasoning. In the first place when a union applies to be chosen as an elector there are other conditions that it must satisfy besides being "national in scope": i.e., it must be "organized in accordance with" the Act, and it must be "otherwise properly qualified to participate in the selection of the labor members" of the National Board. § 153, First, (f). The "board of three" may of course make a specific finding that the applicant union is not "national in scope," as the ground of refusing to admit it as an elector; but if it fails to do so, it will be impossible to know whether this was in fact its ground for refusal; and a proceeding that may leave this issue undecided can hardly be intended as a remedy for any bias of the "System Board." Moreover, in any event the decision of the "board of three" would not be an adequate remedy to the employee. If for instance the "competing" union did not wish to be an elector, there is no reason why that should forfeit the employee's right to an impartial tribunal in deciding whether he should hold his job. Employees have no means of compelling the "competing" union to apply to be an elector; and, even if they had, we can see no justification for forcing them to accept that union as a surrogate to assert their right. As we read § 152, Eleventh, (c), their jobs are dependent only upon whether the "competing" union is in fact "national in scope"; and the Act should be construed to grant them the personal privilege of proving their right before an impartial tribunal.
 
 
 7
 If there is no alternative remedy open to the plaintiffs at bar, there must be some kind of judicial review of the finding against them by the "System Board." Nothing could more completely defeat the most elementary requirement of fair play; and nothing would more firmly entrench the recognized union in power; the temptation to fetch all jobs into that union would ordinarily be irresistible, especially when we remember that the union members of a "System Board" are likely to be persons of consequence in the union itself. Although it is true that Edwards v. Capital Airlines, 84 U.S. App.D.C. 346, 176 F.2d 755, arose under other sections of the Act, its ratio decidendi applies so exactly to the case at bar that we adopt it as a precedent.
 
 
 8
 If it be argued that the result of our decision is inevitably to interject the courts into the enforcement of the right granted by § 152, Eleventh, (a), we answer that that is not necessarily true. Section 153, Second, provides that if either party to an "arrangement" setting up a "System Board" is dissatisfied, it may "elect to come under the jurisdiction of the Adjustment Board." Whether this implies that, if "dissatisfied," the parties must altogether abandon a "System Board" "arrangement," after they have set it up; or whether it allows them to limit the scope of its jurisdiction, we need not say. If it means the second, it will be possible in the agreement setting up a "System Board" to refer disputes such as that at bar to a panel set up under the National Adjustment Act, which can presumably be made impartial. If it means the first, it would indeed result in making inevitable a court review when a "System Board" decides against an employee in situations like that at bar. We can only answer that in that event there is a public interest in the impartial protection of any rights granted by an Act of Congress that transcends the immunity of labor disputes from all surveillance by a court of law.
 
 
 9
 Judgment reversed; cause remanded for trial in accordance with the foregoing opinion.
 
 
 
 Notes:
 
 
 [1]
 § 1337, Title 28, U.S.C
 
 
 [2]
 Slocum v. Delaware, L. & W. R. R. Co., 339 U.S. 239, 70 S.Ct. 577, 94 L.Ed. 795